COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Alston and Senior Judge Annunziata
Argued in Richmond, Virginia

JERRY LEE WASHINGTON
                                                            OPINION BY
v.        Record No. 1428-11-2                    JUDGE D. ARTHUR KELSEY
                                                            JULY 24, 2012
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Gregory A. Ullom, Assistant Public Defender (Office of
the Public Defender, on brief), for appellant.

Alice T. Armstrong, Assistant Attorney General II
(Kenneth T. Cuccinelli, II, Attorney General, on brief),
for appellee.


The trial court found Jerry Lee Washington guilty of burglary, grand larceny, and

destruction of property.  Washington appeals, claiming the trial court erred by denying his

pretrial motion to suppress evidence collected following a warrantless entry into his home.  We

disagree and affirm.

I.

When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."  Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citations

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers."  Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citations

omitted).  "In doing so, we 'consider facts presented both at the suppression hearing and at

trial.'" Tizon v. Commonwealth, 60 Va. App. 1, 15, 723 S.E.2d 260, 267 (2012) (quoting Morris v. City of Va. Beach, 58 Va. App. 173, 176, 707 S.E.2d 479, 480 (2011)).

On January 8, 2011, Jerome and Cheryl Henderson called the Mecklenburg County Sheriff's Office around 11:45 a.m., believing someone had just broken into their home. They waited for the deputies to arrive before entering their residence. It had snowed earlier that morning, but not in the preceding days. Deputy Tim Garner arrived at the Hendersons' home at 12:03 p.m. He observed that a window had been broken out of one of the Hendersons' vehicles. He also discovered someone had broken a window leading into the kitchen. The Hendersons reported various things had been stolen from inside their home, including food, liquor, a tool box, and other household items.

Deputy Garner observed a single set of footprints in the snow, leading from the damaged vehicle to the Hendersons' home. The footprints had a distinct checkered pattern. Given the sharpness of the footprints and the recent snowfall, Deputy Garner concluded the footprints were fresh and believed the suspect had recently left the scene of the crime. He and another deputy followed the checkered-patterned footprints across the street directly to the front door of a residential trailer. The trail of footprints provided a continuous, uninterrupted path from the Hendersons' residence to the trailer.

When one of the deputies knocked on the trailer's front door, it immediately swung open. Fearing the suspect was in the process of burglarizing the trailer, the deputies announced their presence and ordered anyone in the trailer to come out. There was no reply. The deputies then entered the trailer to perform a protective sweep. "We were just clearing it to see if anybody was there," the deputies later testified. App. at 37. While doing so, they saw the toolbox that had been taken from the Hendersons' home. They also looked under a bed where a suspect might be hiding. While attempting to "clear under the bed," one of the deputies "knocked a pair of shoes

out of the way" to get a better look and noticed the shoes had the same checkered pattern as the footprints previously observed in the snow. Id. at 38. After determining no one was in the trailer, the deputies left the trailer, taking no evidence with them, and secured a search warrant from a magistrate.

Pursuant to the warrant, the deputies reentered the trailer that afternoon and discovered nearly all of the items stolen from the Hendersons' home, including stolen food items (still frozen) in a non-working freezer. After the search, Garner encountered Washington walking up the driveway of the trailer. Washington acknowledged that he lived alone at the residence and asked the deputy what was going on. Deputy Garner told him "something had occurred in the area, in the neighborhood." Id. at 145, 148. In response, Washington volunteered that he "hadn't done anything. He hadn't broken into anybody's house." Id. at 146.

After Washington's arrest, a grand jury indicted him for burglary with intent to commit larceny, grand larceny, and destruction of property. Prior to trial, Washington moved to suppress the incriminating evidence found in his trailer. The trial court denied the motion, heard the evidence, and found Washington guilty as charged.

## II.

On appeal, Washington claims the trial court erred by denying his suppression motion. He acknowledges the deputies collected the incriminating evidence pursuant to a search warrant, but contends they obtained the warrant based on observations they made during the initial warrantless entry. This initial entry, Washington argues, violated the Fourth Amendment. We disagree.

### A. THE SUPPRESSION STANDARD

Though the ultimate question whether the officers violated the Fourth Amendment triggers *de novo* appellate scrutiny, "we defer to the trial court's findings of 'historical fact' and

give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Glenn, 49 Va. App. at 418, 642 S.E.2d at 284 (citations omitted). "To prevail on appeal, 'the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error.'" Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 450 (2003) (citation omitted).

Faced with a suppression motion, neither a trial court nor an appellate court should "limit itself to what the 'officer says or to evidence of his subjective rationale'" in assessing the legality of his actions. Morris, 58 Va. App. at 179, 707 S.E.2d at 481 (quoting Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*)). If the police officer's actions are objectively reasonable, the Fourth Amendment authorizes the action, "*whatever* the subjective intent" motivating the officer. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted) (emphasis in original).

Examining the subjective intent of the officer "is fundamentally inconsistent with our Fourth Amendment jurisprudence," Kentucky v. King, 131 S. Ct. 1849, 1859 (2011), because "the Fourth Amendment regulates conduct rather than thoughts," al-Kidd, 131 S. Ct. at 2080-81 (noting narrow exceptions); see also Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (holding the officer's "subjective motivation is irrelevant"). "Stated another way, we do not consider allegations of the officer's real motive for his actions if they otherwise satisfy the objective reasonableness standard adopted by the Fourth Amendment. An officer's ulterior motive, whatever it might be, does not nullify an objectively valid legal justification for his actions." Thomas v. Commonwealth, 57 Va. App. 267, 274, 701 S.E.2d 87, 91 (2010) (citations and internal quotation marks omitted).

Overarching this standard is our recognition that the suppression remedy imposes "substantial social costs" that sometimes include "setting the guilty free and the dangerous at large." Echavarry v. Commonwealth, 60 Va. App. 177, 184, 725 S.E.2d 151, 155 (2012) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). Thus, suppression of evidence should be "our last resort, not our first impulse." Id. (quoting Hudson, 547 U.S. at 591). Standing alone, the "fact that a Fourth Amendment violation occurred — *i.e.*, that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 141 (2009). Though the Fourth Amendment prohibits unreasonable searches and seizures, it "says nothing about suppressing evidence obtained in violation of this command." Davis v. United States, 131 S. Ct. 2419, 2426 (2011).

Because "the exclusionary rule is not an individual right," prior precedent has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." Herring, 555 U.S. at 141. "To trigger the exclusionary rule," therefore, the challenged "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 144. The criminal defendant must shoulder the burden of demonstrating this justification for suppressing evidence and, in doing so, he "faces 'a high obstacle' in demonstrating that exclusion is appropriate." Fitchett v. Commonwealth, 56 Va. App. 741, 746, 697 S.E.2d 28, 31 (2010) (quoting Hudson, 547 U.S. at 591).

## B. WARRANTLESS ENTRY INTO A RESIDENCE

"Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals." Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005) (*en banc*); see generally Kyllo v. United States, 533 U.S. 27, 31 (2001). As a general rule, "searches and seizures inside a home without a warrant are presumptively unreasonable."

King, 131 S. Ct. at 1856 (citation omitted). "But even on this topic the Fourth Amendment's text endorses no absolutes. It instead condemns only 'unreasonable' searches and seizures." Kyer, 45 Va. App. at 480, 612 S.E.2d at 217. The "presumption may be overcome in some circumstances" because the "warrant requirement is subject to certain reasonable exceptions." King, 131 S. Ct. at 1856 (citations omitted). "One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Id. (citations and internal brackets omitted).

Coupled with a showing of probable cause, there are "several exigencies that may justify a warrantless search of a home." Id.; see also Smith v. Commonwealth, 56 Va. App. 592, 598, 696 S.E.2d 211, 214 (2010). One such exigency occurs where officers "reasonably believe that the premises have recently been or are being burglarized." 3 Wayne R. LaFave, Search & Seizure § 6.6(b), at 470-72 (4th ed. 2004). "If it is possible the burglar is still at the scene, the police may look in places where he might be hiding." Id. at 474.[1]

We addressed just this situation in Hill v. Commonwealth, 18 Va. App. 1, 441 S.E.2d 50 (1994). In that case, a neighbor telephoned the police and reported a possible burglary at a nearby residence. The front door of the residence was open, and the owner had been gone for two days. The police arrived on the scene, rang the doorbell, and shouted several times through the open door for anyone inside to respond. "Still receiving no response, the officers entered the house to investigate the possibility of a burglary. They again announced themselves and,

---

[1] See also Hunsberger v. Wood, 570 F.3d 546, 555 (4th Cir. 2009); United States v. McCullough, 457 F.3d 1150, 1164 (10th Cir. 2006); United States v. Brown, 449 F.3d 741, 748-49 (6th Cir. 2006); Leaf v. Shelnutt, 400 F.3d 1070, 1081-82 (7th Cir. 2005); In re Sealed Case 96-3167, 153 F.3d 759, 766-67 (D.C. Cir. 1998); United States v. Tibolt, 72 F.3d 965, 970-71 (1st Cir. 1995).

receiving no response, searched the house in places where a burglar might hide, including closets and under beds." Id. at 2, 441 S.E.2d at 51. They did not find the burglar but observed contraband, which they later retrieved pursuant to a search warrant.

We held in Hill that the officers had probable cause to believe the home had been "unlawfully entered" and they "reasonably suspected that the burglar might still be in the house." Id. at 4, 441 S.E.2d at 51. "The circumstances required prompt action," we emphasized. Id. The officers had a duty to determine whether the "house had, in fact, been burglarized, to apprehend the burglar, and to resecure the premises." Id. "It would have been impractical for one officer to go for a warrant while the other attempted to secure the premises from all sides. The circumstances created a situation of exigency, requiring immediate, warrantless entry." Id.; see United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982) ("it would defy reason to suppose that [officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested"), adopted in relevant part, 710 F.2d 431 (1983) (*en banc*).

C. ENTRY INTO WASHINGTON'S TRAILER

The information known by the deputies in this case supports the trial court's finding of probable cause and exigent circumstances. The deputies had just received a report of a recent burglary of the Hendersons' home. Fresh footprints in the snow led from the broken kitchen window to the damaged vehicle to the doorstep of Washington's trailer. The snow had fallen that morning, but not during the preceding days. The distinct checkered footprint left a clean and sharp trail from one clearly burglarized home to another residence that the deputies reasonably suspected was in the process of being burglarized. The door to the trailer opened simply upon knocking on it, further confirming the deputies' suspicions. Hearing no reply to their request that anyone inside should come out, the deputies could have reasonably feared a burglar had incapacitated anyone living in the trailer or threatened them to remain silent.

Washington contends the deputies could not be certain a burglary suspect was still in the trailer. True, but the deputies were "not required to possess either the gift of prophecy or the infallible wisdom that comes with hindsight. Their conduct in making a warrantless search must be judged by the circumstances confronting the officers at the time they act." Hill, 18 Va. App. at 3, 441 S.E.2d at 51 (quoting Reynolds v. Commonwealth, 9 Va. App. 430, 437, 388 S.E.2d 659, 664 (1990)). In Fourth Amendment cases, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." Ryburn v. Huff, 132 S. Ct. 987, 992 (2012) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Police officers must often make an "on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences." United States v. Taylor, 624 F.3d 626, 634 (4th Cir. 2010) (quoting United States v. Martins, 413 F.3d 139, 147 (1st Cir. 2005)). When they do so, courts should not "engage in 'should have/could have/would have' hindsight" to second-guess their objectively reasonable judgments. Id.

For these reasons, the trial court correctly denied Washington's motion to suppress the incriminating evidence obtained from the later search pursuant to the warrant. The deputies' initial warrantless entry did not violate the Fourth Amendment's prohibition against unreasonable searches, and thus, the observations made during their protective sweep did not taint the application for the search warrant.[2]

---

[2] Given our holding, we need not address whether the search warrant would have justified the seizure of evidence from the trailer notwithstanding the allegedly tainted information gained during the initial warrantless entry. See generally Williams v. Commonwealth, 26 Va. App. 612, 619, 496 S.E.2d 113, 116 (1998); United States v. Moses, 540 F.3d 263, 271 (4th Cir. 2008); Ronald J. Bacigal, Criminal Procedure § 4:5, at 81 (2011-12 ed.).

III.

Because probable cause and exigent circumstances justified the deputies' warrantless entry into Washington's trailer, the trial court did not err in denying his motion to suppress. We thus affirm Washington's convictions.

<u>Affirmed.</u>