COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Alston and Senior Judge Bumgardner
Argued at Chesapeake, Virginia

UNPUBLISHED

JARICE LAMIER ROYAL

v.      Record No. 1446-11-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROSSIE D. ALSTON, JR.
JANUARY 8, 2013

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Paul E. Turner, Jr. (Turner & Kissinger, PLC, on briefs), for
appellant.

Victoria Johnson, Assistant Attorney General I (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Jarice Lamier Royal ("defendant") appeals his convictions for two counts of use of a

firearm during the commission of a felony in violation of Code § 18.2-53.1, one count of

attempted robbery in violation of Code §§ 18.2-26 and 18.2-58, and one count of murder in

violation of Code § 18.2-32. On appeal, defendant contends that the trial court erred in denying

his motion to suppress potentially incriminating statements made during defendant's police

interview. Assuming without deciding that defendant made a clear and unequivocal request for

counsel, we nevertheless find any error harmless beyond a reasonable doubt and affirm

defendant's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On appeal from the trial court's denial of defendant's motion to suppress, this Court

views the evidence "in the light most favorable to the Commonwealth, giving it the benefit of

any reasonable inferences." Washington v. Commonwealth, 60 Va. App. 427, 432, 728 S.E.2d

521, 524 (2012) (quoting Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283

(2007) (*en banc*)).

So viewed, the evidence indicated that on the evening of February 17, 2008, William

Morrison was playing dice with his neighbors at the Newport Harbor Apartments in Newport

News. Morrison eventually took a break from playing dice and went to a store to buy beer.

While Morrison was away, defendant and Lloyd Jackson arrived at the apartment complex and

began talking with "Little Lonnie," one of Morrison's acquaintances. Tranesha Terry, who was

at the dice game, overheard defendant ask, "Where the licks at?" to which "Little Lonnie"

replied that "he was at the store" and "he'd be right back." Terry testified during defendant's

trial that "licks" meant "stick 'em up or rob."

Shortly thereafter, Morrison returned and continued gambling with defendant and

Jackson, while others, including Terry, watched. Soon after resuming the game, Jackson

approached Morrison and a fight ensued. Terry testified at trial that Morrison was getting the

best of Jackson, when defendant pulled out a gun and fired several rounds. Police responded to

the scene shortly after the shooting, where Morrison was found lying on the ground. Morrison

died shortly thereafter from multiple gunshot wounds.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

On April 11, 2008, defendant was arrested and taken to the Newport News Police Department headquarters. When detectives from the police department first entered the interrogation room where defendant was being held, the detectives found defendant lying on the floor. Defendant indicated he was sick, though he did not elaborate. Detective Williams helped defendant up from the floor and then read defendant his Miranda rights from a pre-printed form. Asked if he understood his rights, defendant responded, "Um-hum," which Detectives Williams and Best interpreted as a statement of assent. Defendant did not complete a waiver of rights form, nor did he explicitly state that he was waiving his right to remain silent.

After being advised of his rights, defendant initiated a conversation with Detective Williams, and they talked for "[a] long time." Later, Detective Sorrell entered the interrogation room and, at defendant's request, prayed with defendant. Following Detective Sorrell's prayer, defendant engaged Detective Sorrell in a conversation about his right to counsel.

> [Defendant]: That was a real prayer, man.
>
> [Detective Sorrell]: It ain't made up, brother. That's all I can tell you, it ain't made up, and I'm not much of a speaker. Most of the guys you run into there will tell you I'm not much of a speaker. I just kind of have to speak, that's just me. That's all I can do. My prayer is sincere, and, again, this is a choice you have to make, what you want to do. I'll sit in here and listen to you, and we can go from there, but it's entirely up to you. You understand that, right?
>
> [Defendant]: I mean would it, would it, would it be okay if my lawyer was with me present during this?
>
> [Detective Sorrell]: Would it be okay?
>
> [Defendant]: Yeah.
>
> [Detective Sorrell]: That is a choice that you have to make. You're asking me that question. That's a choice you have to make. If you want your lawyer to be here you have to tell us that. It's not –

[Defendant]: I mean, if you-all don't mind, I'm just saying.

[Detective Sorrell]: All we want is the truth.

[Defendant]: I mean, I don't mind telling you the truth in front of my lawyer. I don't mind, I promise. I don't mind. Just to know that we all, you know, you guys got that security backup system with each other, you-all got that security with each other, you know what I mean.

Following this exchange with Detective Sorrell, defendant made a number of statements that both parties agreed "could be construed as incriminating." In particular, defendant told Detective Sorrell during questioning that he was at the Newport Harbor Apartments during the day of February 17, 2008, but was not at the apartment complex at the time of the shooting. Defendant also did not mention during the interview that he shot Morrison in self-defense or in defense of another.

On April 19, 2011, defendant filed a motion to suppress the potentially incriminating statements made during his police interview. At the suppression hearing, defendant claimed that he did not understand his <u>Miranda</u> rights at the time they were read to him because he was under the influence of alcohol and drugs. Defendant also claimed he did not understand his rights during the investigation and argues that, even if he did waive his <u>Miranda</u> rights, he later invoked his right to counsel under <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981), and all police questioning should have ceased.

At the suppression hearing, Detective Williams testified that he read defendant his <u>Miranda</u> rights, which defendant indicated he understood. Detective Williams also testified that after defendant indicated he understood his rights, defendant began talking to Detective Williams, and the two talked for a long time. Detective Williams did not recall smelling alcohol

on defendant, and he stated that defendant did not appear to be under the influence of anything at the time of the interview.

The trial court denied defendant's motion to suppress. The trial court did "not have any difficulty believing that [defendant] understood [his] rights." Moreover, the trial court also held that defendant did not assert his right to remain silent and his statements concerning the presence of counsel were inquiries as to his right to counsel and not an unequivocal request for counsel.

A jury trial commenced shortly after the trial court denied defendant's motion to suppress. Terry testified for the Commonwealth regarding the events of February 17, 2008, as stated above. Detective Sorrell testified for the Commonwealth concerning defendant's police interview. Detective Sorrell testified that defendant admitted to being at the Newport Harbor Apartment complex during the day of the shooting but denied being there when the shooting occurred. Detective Sorrell also testified that defendant did not mention during the interview that he shot Morrison in self-defense or in defense of another. In addition to Detective Sorrell's testimony, the Commonwealth also played for the jury a DVD that included portions of defendant's interrogation.[2]

The Commonwealth also presented the testimony of Dontrell Little, an inmate in the Hampton Roads Regional Jail who was housed with defendant for a period of two to three months beginning in the summer of 2008. Dontrell stated that during that time, defendant told

_____

[2] Both parties agree that the DVD included incriminating evidence. However, defendant has failed to present this Court with a transcript of the portions of the DVD played for the jury, making it impossible for this Court to determine what incriminating statements the jury heard. See Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961) ("[O]n appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of."). Accordingly, our review of the trial court's denial of defendant's motion to suppress as well as our review of the harm, if any, that resulted from the trial court's denial, is limited to Detective Sorrell's testimony concerning defendant's interrogation.

him that he was at the dice game, that he planned to rob Morrison, and that he eventually shot Morrison. The Commonwealth also presented the testimony of Devon Banks, an inmate at Hampton Roads Regional Jail, who received letters from defendant while the two were incarcerated. During his testimony, Banks read from one letter in which defendant instructed Banks to contact Detective Best and offer to testify for the Commonwealth against defendant. The letter went on to instruct Banks to "go all the way to the point where they say they gonna [sic] use you in court, then flip on [them]. . . . Be like, 'Your Honor, I can't do this. Detective Best told me info about this case, her and other detectives, cuz [sic] they said they wanted this guy real bad.'" The letter closed by instructing Banks to incriminate another individual who had been present at the shooting.

Defendant testified on his own behalf, stating that he was at the apartment complex on the day of the shooting and that he shot Morrison in self-defense. Defendant also presented two witnesses who were present during the shooting and corroborated his testimony.

The jury found defendant guilty on all four charges, and the trial court sentenced defendant to twenty-eight years' imprisonment on the murder charge, three years' imprisonment on the attempted robbery charge, and three years' and five years' imprisonment, respectively, on the use or possession of a firearm charges.

This appeal followed.

ANALYSIS

Defendant makes two arguments challenging the trial court's decision to deny his motion to suppress. Defendant contends that the Commonwealth has not met its burden in establishing that defendant waived his Fifth Amendment rights to remain silent and proceed with questioning without counsel. Specifically, defendant argues that he was never asked whether he waived his

- 6 -

Miranda rights and never waived or intended to waive his Miranda rights. Defendant also contends that he was under the influence of alcohol and drugs at the time of the interrogation and unable to understand the Miranda rights read to him. Second, defendant argues that he clearly and unequivocally invoked his right to counsel during questioning by the police, and, thus, his interrogation statements should have been suppressed.

In reviewing defendant's first contention, we note that a trial court's determination that a waiver of Miranda rights "was made knowingly and intelligently is a question of fact that will not be set aside on appeal unless plainly wrong." Angel v. Commonwealth, 281 Va. 248, 258, 704 S.E.2d 386, 392 (2011) (citing Jackson v. Commonwealth, 266 Va. 423, 432, 587 S.E.2d 532, 540 (2003)). Here, the trial court determined that defendant understood his Miranda rights and knowingly and intelligently waived those rights. Upon review, we find the trial court's decision is not plainly wrong or without supporting evidence in the record, and, accordingly, affirm the trial court's decision.

While "a valid waiver will not be presumed simply from the silence of the accused after the warnings are given," Miranda does not require "a waiver to be in writing or verbally expressed, nor does it preclude the conclusion that a waiver occurred based on the suspect's course of conduct." Angel, 281 Va. at 259, 704 S.E.2d at 392; see Cheng v. Commonwealth, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990) ("Cheng's decision to talk with Officer Carter, after having been advised of the Miranda rights, constitutes an implied waiver of those rights."); see also Eaton v. Commonwealth, 240 Va. 236, 251, 397 S.E.2d 385, 394 (1990) (inferring a waiver of defendant's right to counsel where defendant willingly engaged in discussion of the case with the officers after receiving Miranda warnings). Here, defendant's course of conduct, initiating a conversation with Detective Williams immediately after receiving his Miranda warnings and

again later with Detective Sorrell, supports the trial court's determination that defendant waived his right to remain silent.

In addition, the trial court also watched pertinent portions of the interrogation, which were recorded on DVD and played during trial, and had the opportunity to view defendant's demeanor during the interrogation generally as well as after detectives read defendant his Miranda rights. The trial court was entitled to conclude, based on its observations of defendant's demeanor in addition to defendant's actions, that defendant waived his right to remain silent.

While defendant alleges that he was sick and under the influence of alcohol and drugs during the interrogation, the interrogating detectives testified that defendant did not show any objective signs of illness, disorientation, or intoxication and did not have an odor of alcohol. Further, the trial court noted after watching the DVD recording of the interview that defendant did not "sound like he was terribly ill" when he attempted to request counsel and that "[e]ither he had a miraculous recovery, or I don't know what sick means at that point, but it certainly isn't what I would refer to as an acute illness." The trial court, as trier of fact, was free to disbelieve defendant's self-serving testimony that he was intoxicated during the interrogation and rely instead on the detectives' testimony that defendant did not demonstrate observable signs of intoxication. See Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992) ("Conflicts in evidence present factual questions that are to be resolved by the trial court," which has the opportunity to "'evaluate the credibility of the witnesses, resolve conflicts in their testimony and weigh the evidence as a whole.'" (quoting Albert v. Commonwealth, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986))). Accordingly, the trial court's finding is not plainly wrong or unsupported by the evidence.

Defendant also alleges that the trial court erred in denying his motion to suppress because his statements made during interrogation were inadmissible because the police continued questioning him after he had clearly and unequivocally invoked his right to have an attorney present during the interrogation.

Whether a defendant's "'words, taken in context, were sufficient to invoke his right to counsel'" is a legal question requiring a *de novo* review.  Zektaw v. Commonwealth, 278 Va. 127, 135, 677 S.E.2d 49, 53 (2009) (quoting Commonwealth v. Hilliard, 270 Va. 42, 50, 613 S.E.2d 579, 584 (2005)).  To constitute a request for counsel, a defendant's request must be clear, unambiguous, and unequivocal.  Id. at 136, 677 S.E.2d at 53.  "Although a suspect need not 'speak with the discrimination of an Oxford don, . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  Commonwealth v. Redmond, 264 Va. 321, 328-29, 568 S.E.2d 695, 699 (2002).  "'[A] statement either is such an assertion of the right to counsel or it is not.'"  Davis v. United States, 512 U.S. 452, 459 (1994) (quoting Smith v. Illinois, 469 U.S. 91, 97-98 (1984)).

In the present case, however, it is unnecessary to determine whether defendant made such a clear and unequivocal request.  Assuming without deciding that defendant's statements constituted a clear and unequivocal request for counsel and that the trial court erred in denying his motion to suppress, that alleged constitutional error was harmless beyond a reasonable doubt in these circumstances.

Before determining that a constitutional error was harmless,

> "the court must be able to declare a belief that it was harmless
> beyond a reasonable doubt;" otherwise the conviction under review
> must be set aside.  Chapman v. California, 386 U.S. 18, 24 (1967).
> This standard requires a determination of "whether there is a

reasonable possibility that the evidence complained of might have contributed to the conviction." Id. at 23.  In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citations omitted).

On appeal, defendant argues that "there is clearly more than a reasonable possibility that [his] statements during his interrogation . . . as testified to by Detective Sorrell, contributed to his convictions."  Defendant asserts that the Commonwealth presented only one eyewitness to the incident at trial and alleges that the eyewitness' testimony was heavily impeached.  Conversely, defendant testified that the shooting occurred in self-defense, and he produced two eyewitnesses to corroborate his testimony.  Accordingly, defendant alleges that Detective Sorrell's testimony damaged his credibility and "was a significant factor in the jury's resolution of the conflicting testimony."

While defendant alleges that his credibility was diminished by Detective Sorrell's testimony, there is no reasonable possibility that Detective Sorrell's testimony contributed to the conviction where, as here, the tainted evidence was cumulative of more significant evidence.  At trial, defendant testified that he shot Morrison, though he claimed he acted in self-defense. The Commonwealth presented testimony from an eyewitness, Terry, who saw defendant at the scene of the crime, overheard defendant discuss robbing Morrison, and saw defendant shoot Morrison.  While defendant alleges that Terry's testimony was heavily impeached, the "credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  Because

credibility determinations are solely the province of the fact finder, Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989), the jury was entitled to accept Terry's account and, having done so, the jury was free to perceive defendant's self-defense testimony as an attempt to conceal his guilt. Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) ("Further, a fact-finder, having rejected a defendant's attempted explanation as untrue, may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt.").

Moreover, in addition to the eyewitness testimony, the Commonwealth also presented testimony from Dontrell, an inmate who was incarcerated in the Hampton Roads Regional Jail at the same time as defendant, who stated that defendant confessed to the crimes of attempted robbery and murder. Specifically, Dontrell testified that defendant admitted that he and a friend decided after losing in the dice game to rob Morrison and, during that attempt, defendant shot Morrison. The Commonwealth also presented the testimony of a second inmate, Banks, who testified that defendant asked him to lie to detectives investigating the case. That testimony included Banks reading from a letter sent to him by defendant, which encouraged the witness to offer to testify for the Commonwealth and to "go all the way to the point where they say they gonna use you in court, then flip on [them]" and incriminate another individual at the dice game. From the evidence presented we are able to conclude that there is no reasonable possibility that the admission into evidence of defendant's interrogation statements contributed to defendant's conviction. Because the Commonwealth presented other significant evidence that supported the conviction, contradicted defendant's testimony, and questioned defendant's credibility, this Court is able to discern that the alleged constitutional error was harmless beyond a reasonable doubt.

CONCLUSION

Assuming without deciding that the trial court erred in denying defendant's motion to suppress, because we find that any such error was harmless, we affirm defendant's convictions.

<u>Affirmed.</u>