COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia


RENEE MICHELLE PARADY

                                                            OPINION BY
v.        Record No. 0744-22-4                     JUDGE LISA M. LORISH
                                                            JULY 5, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

Ryan J. Rakness (Rakness & Wright PLC, on brief), for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The Commonwealth bears the burden of proving that a warrantless search fits under an

exception to the warrant requirement of the Fourth Amendment. While the exceptions are many,

mere probable cause to arrest is not one of them. Nor can a search be incident to an arrest when the

arrest comes two months after the search. As such, we must reverse and remand for further

proceedings.

BACKGROUND[1]

Around 1:30 a.m. on January 28, 2021, Culpeper County Sheriff's Deputy Dustin Tharp

stopped a pickup truck with three occupants: Kenneth Hawkins, Renee Parady, and Leslie Pullen.[2]

---

[1] When considering a challenge to the denial of a motion to suppress, we "view the evidence
in the light most favorable to the prevailing party, the Commonwealth, with all inferences fairly
deducible from that evidence accorded to the Commonwealth." *McArthur v. Commonwealth*, 72
Va. App. 352, 359 (2020).

[2] Parady does not challenge the lawfulness of the traffic stop.

Deputy Tharp pulled over the truck after running the license plates and discovering that the plates belonged to a different vehicle. He ordered Hawkins, the driver, to exit the truck because he had an outstanding capias for his arrest. Hawkins told Deputy Tharp he knew about the capias, but had not turned himself in because he had been quarantining after getting sick in a household with people who had COVID-19, including Parady. Parady, the passenger sitting on the right side of the truck's bench seat, remained in the truck with Pullen, who sat in the middle of the bench. Parady was "extremely nervous." She told Deputy Tharp that she had "anxiety" because a Florida police officer had previously held her "against [her] will."

Deputy Tharp arrested Hawkins on the outstanding warrant. Deputies John Clubb and David Cole then arrived with a trained narcotics dog, and Deputy Tharp searched Hawkins incident to arrest without finding any contraband.[3] The dog conducted a "free air sniff" and "alerted" to the driver's side door of the truck. Hawkins said it was not his truck and denied that he or his passengers had recently purchased "dope." Deputy Tharp then removed Pullen from the truck. Deputy Tharp already knew Pullen—she was a police informant who had given him reliable information twice in the past. Deputy Tharp pulled her off to the side to search her while asking why the dog alerted. Pullen said, "[I]t's in her pussy." Deputy Tharp found no contraband on Pullen.

Deputy Tharp then approached Parady while she was still in the truck and said, "Do you want to give me what you've got?" Saying she had "nothing," Parady became distraught and apologized. At Deputy Tharp's direction, Parady got out of the truck with her arms raised, and Deputy Tharp then guided her and went to the rear of the truck. Deputy Tharp noticed that Parady

---

[3] At the suppression hearing, Deputy Tharp testified that he waited for additional deputies to arrive before searching Hawkins "for obvious officer safety reasons."

squeezed her upper legs together as she moved as though she "may be concealing something in her pants."  She was wearing what Deputy Tharp described as "yoga elastic style pants."

Once Parady's hands were on the back of the truck, Deputy Tharp prepared to search her and asked if she had "anything on her," which Parady denied, while starting to pat her own sides and saying she did not have pockets.  Deputy Tharp told her "don't go reaching," and Parady immediately raised her hands, and then placed them on the truck with her feet spread apart, as the deputy directed.

After her legs were spread apart, Deputy Tharp immediately began to search the area between Parady's legs, moving his hand "credit [card] style" and felt "[s]omething abnormal" in the "groin area" within a second.[4]  Deputy Tharp explained that he could feel that "there was an object in . . . the crotch area" that was not "a leg or a body part," although he could not determine whether the object was "hard" or "soft."  Deputy Tharp said, "Do you want me to pull it out or do you want me to go write a search warrant and [have] them pull it out of you at the hospital?"  Parady replied "what," and Deputy Tharp explained "what's in your pants or what's inside of you."  Parady said her "headphone case" was inside her tights, but claimed, "I don't know what's in there."  Deputy Tharp said, "I'm not dumb," and Parady repeated, "I swear on my kids I don't know what's in the case."  Deputy Tharp then said "pull it out," and Parady replied "okay" and removed a black circular case with a zipper around it.

---

[4] The Commonwealth described the search this way in its opposition to the motion to suppress:

> Tharp ordered the defendant to separate her feet.  When Deputy Tharp went to search defendant's groin area the first time, the defendant clenched her upper legs.  Deputy Tharp again ordered the defendant to separate her feet, and this time the defendant relented.  After the defendant complied, Deputy Tharp patted with his gloved right hand outside of the defendant's pants in between her legs for roughly one-half of one second.

After Deputy Tharp finished searching Parady, he handcuffed her and told her she was "being detained." Deputy Clubb placed Parady inside a patrol car. Deputy Tharp then opened the headphone case and found it contained six capsules containing "white solid material," a tan rock inside a folded receipt, and a "ziplock bag with crystalline material." He then searched the truck and did not find any contraband. Deputy Tharp read *Miranda*[5] warnings to Parady and reiterated that she was "being detained." Parady told Deputy Tharp that she was "holding the drugs for a friend who lives in town." Parady also said that she had recently tested positive for COVID-19.

Deputy Tharp released Parady without charging her for possessing the suspected narcotics. He told Parady that the jail would not accept her due to her illness, but warned her, "That stuff's gonna get sent off to the lab, you were in possession of it, and I'm gonna come back and charge you." Subsequent laboratory testing established that the suspected narcotics contained Schedule I and II controlled substances. More than two months later, on April 2, 2021, Deputy Tharp arrested Parady for possessing the drugs. At a later hearing, Deputy Tharp testified that he did not arrest Parady during the traffic stop and explained that he "release[d]" her after "detain[ing]" her and that "she was not arrested until" months later, after "the lab results came back."

When asked why he searched Parady, Deputy Tharp testified that he was "looking for" drugs in her crotch based on what the other passenger, Pullen, had told him. When Pullen told him "it" was in Parady's genital region, Deputy Tharp testified that he understood "it" to mean narcotics. Deputy Tharp also explained that he searched Parady "[d]ue to the alert to the odor of narcotics within the vehicle that she was still sitting in when the certified canine alerted to the vehicle." When asked why he did not get a warrant, Deputy Tharp said, "I felt that with the . . . odor of the narcotics dog, based off of the statements, that I had reasonable suspicion of probable cause to believe she was concealing narcotics in her pants."

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Parady moved to suppress the drugs, arguing that the warrantless search was unconstitutional.[6]  The Commonwealth argued that the search was justified as a valid search incident to arrest because Deputy Tharp had probable cause to believe Parady possessed narcotics and performed a de facto arrest when he handcuffed Parady, placed her in the patrol car, and read her *Miranda* warnings.  The Commonwealth further argued that even if Deputy Tharp had not actually arrested Parady, he could search her solely based on probable cause to arrest her for the possession of narcotics.  Alternatively, the Commonwealth contended that exigent circumstances justified the search because "a reasonable officer in [Deputy Tharp's] position would have believed" that Parady was "concealing" contraband on her person that she intended to "remove[] or destroy[]."

In response, Parady asserted that the search incident to arrest exception could not justify the warrantless search of her person because (1) Deputy Tharp did not have probable cause to believe she possessed narcotics, (2) probable cause to arrest does not justify a warrantless search without a contemporaneous arrest, and (3) the search was not contemporaneous with her arrest.  Parady also argued that exigent circumstances did not justify the search because "the scene [was] totally secure."

The trial court found "it's ludicrous to say" that Deputy Tharp could not "maintain the status quo to go get a search warrant," and rejected the exigent circumstances argument.  After taking the other arguments under advisement, the court issued a letter opinion finding that "probable cause to search [a person] can exist independently of the probable cause to arrest (which contains the right to search incident to the arrest)."  The trial court found that Deputy Tharp "had probable cause to search" Parady "based on the totality of the circumstances," including "[t]he dog's alert combined

---

[6] After general district court Judge Theresa W. Carter agreed the search was unconstitutional at a preliminary hearing, the Commonwealth nolle prossed the charge and directly indicted Parady, leading to a suppression hearing in the trial court.  The trial court admitted Deputy Tharp's testimony from the preliminary hearing at the later suppression hearing.  Thus, his testimony from both hearings is part of the record on appeal.

with Pullen's statements, the altered license plate on the truck and [Parady's] nervous demeanor." Thus, the trial court concluded that Deputy Tharp lawfully searched Parady's person based solely on probable cause to believe she possessed narcotics. Accordingly, the trial court denied the motion to suppress. Parady entered a conditional guilty plea for felony possession of a controlled substance, while reserving her right under Code § 19.2-254 to appeal the court's denial of her motion to suppress.

ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "[W]arrantless searches are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Megel v. Commonwealth*, 262 Va. 531, 534 (2001). Deputy Tharp searched Parady without a warrant, thus "the Commonwealth ha[d] the burden of proving the legitimacy of [the] warrantless search and seizure." *Reittinger v. Commonwealth*, 260 Va. 232, 235-36 (2000). Now appealing the trial court's denial of her motion to suppress, Parady "bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). We are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). That said, we "review[] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020).

The Commonwealth argued three theories below. First, that Deputy Tharp had "probable cause to believe that the defendant was concealing narcotics on her person" and that this probable cause authorized a warrantless search. The trial court agreed, and the Commonwealth defends this reasoning on appeal. The trial court did not make a finding on the second theory

(that Parady was placed under a de facto arrest at the scene and thus the search was "incident to arrest") and rejected the third (that the search was justified by exigent circumstances). The Commonwealth has not asked us to review the court's fact-based determinations (or lack thereof) on either of these points here.

As we explain below, probable cause that an individual has contraband, without more, meets the standard for *obtaining* a warrant, not searching *without* one. We then conclude the record the Commonwealth developed below is insufficient to allow us to apply the right result, wrong reason doctrine and affirm on any other ground. Finally, we find that the good-faith exception to the exclusionary rule does not apply.

A. Probable cause that an individual possesses contraband is not an exception to the warrant requirement.

In the foundational Fourth Amendment case *Katz v. United States*, 389 U.S. 347, 356-57 (1967), the Supreme Court explained that it had "never sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end." "Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause'" because "the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police.'" *Id*. at 357 (first quoting *Agnello v. United States*, 269 U.S. 20, 33 (1925); and then quoting *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963)). This bedrock principle remains true. But the number of exceptions to the Fourth Amendment warrant requirement make this an exceedingly difficult analysis, and we sympathize with the trial judge here.

For one, individuals may be searched where "exigent circumstances" exist. *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) ("One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that a

warrantless search is objectively reasonable under the Fourth Amendment." (quoting *Washington v. Commonwealth*, 60 Va. App. 427, 436 (2012))). Exigent circumstances include "continuing criminal activity, a person requiring medical care, or the destruction of evidence, that likely will worsen if the officers take the time necessary to get a warrant." *White v. Commonwealth*, 73 Va. App. 535, 556 (2021).[7] Officer safety and the fear that evidence will be destroyed before a warrant can be obtained are key justifications for the exigent circumstances exception to the Fourth Amendment warrant requirement. *See Verez v. Commonwealth*, 230 Va. 405, 410-11 (1985).[8]

These same rationales justify the search incident to arrest exception to the warrant requirement. *Chimel v. California*, 395 U.S. 752, 763 (1969); *Knowles v. Iowa*, 525 U.S. 113, 116-18 (1998) (recognizing "the two historical rationales" of "officer safety" and the "need to discover and preserve evidence"). As a result, the search incident to arrest "exception" is really a

---

[7] Here, the trial court found that exigent circumstances did not justify the warrantless search because "it's ludicrous to say" that Deputy Tharp could not "maintain the status quo to go get a search warrant." The record supports that finding as, with the presence of three officers on the scene and Parady safely detained, Deputy Tharp could have preserved the status quo while seeking a warrant. *White*, 73 Va. App. at 556-57 (holding that the exigent circumstances exception is not applicable if, at the time of the search, "it appears that there is no imminent change to the circumstances about to occur and that the status quo largely can be maintained while the officers seek a warrant").

[8] On brief, the Commonwealth suggests dicta from *Poindexter v. Commonwealth*, 16 Va. App. 730 (1993), establishes that a limited search could be justified based on probable cause of contraband alone, but this reasoning collapses back on the exigent circumstances exception. In *Poindexter*, we noted that "if the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest." 16 Va. App. at 733 (citing *Cupp v. Murphy*, 412 U.S. 291, 295-96 (1973)). As *Poindexter* went on to explain, *Cupp* has been interpreted to allow a search without "formal arrest," where "the suspect is reasonably believed to be in the actual process of destroying 'highly evanescent evidence.'" *Id.* at 733 n.1 (quoting 2 Wayne R. LaFave, *Search and Seizure* § 5.4(b), at 519 (2d ed. 1987)). Indeed, the United States Supreme Court has interpreted *Cupp* as holding that "law enforcement officers may conduct a search without a warrant *to prevent the imminent destruction of evidence*." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013) (emphasis added) (citing *Cupp*, 412 U.S. at 296); *see also Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2541 (2019) (Thomas, J., concurring) (citing *Cupp*, 412 U.S. at 295-96).

subset of the "exigent circumstances" doctrine; one of the "particular types of exigencies—circumstances that present a compelling need for immediate action—which occur often enough that the courts treat them as separate exceptions to the Warrant Clause." Ronald J. Bacigal & Corinna Barrett Lain, *Warrantless Searches—Exigent Circumstances*, Va. Prac. Crim. Pro. § 4:24 (2022-2023 ed.).

An officer may search after—or even before—an arrest so long as the search "is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest." *Stoner v. California*, 376 U.S. 483, 486 (1964); *Copeland v. Commonwealth*, 42 Va. App. 424, 433 (2004) (search may occur "either before or after" an arrest so long as "the search is contemporaneous with the arrest" (quoting *Italiano v. Commonwealth*, 214 Va. 334, 336 (1973))). This well-established exception to the warrant requirement has long been understood as promoting officer safety and evidence preservation. *Chimel*, 395 U.S. at 763; *Knowles*, 525 U.S. at 116-18. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel*, 395 U.S. at 762-63. Likewise, it is "entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 763. As originally conceived, this justification extended to the area "within [the arrestee's] immediate control" and did not extend to "any room other than that in which an arrest occurs." *Id.* "Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." *Id.*

While the Commonwealth argued below that Parady was arrested the night of the search, when, after the search, Deputy Tharp placed her in handcuffs and ordered her to stay in the back of the police vehicle, the Commonwealth has abandoned that argument on appeal—for good

reason.[9]  "Brief, complete deprivations of a suspect's liberty, including handcuffing" do not automatically transform an encounter into an arrest.  *Johnson v. Commonwealth*, 20 Va. App. 49, 55 (1995) (quoting *Thomas v. Commonwealth*, 16 Va. App. 851, 857 (1993)).  Nor does the "fact that [the defendant] was placed in the back seat of a police vehicle while awaiting the arrival of the canine unit."  *Lawson v. Commonwealth*, 55 Va. App. 549, 559 (2010).  Given Deputy Tharp's repeated statements to Parady that she was *not* under arrest and only "being detained" for further investigation, as well as Deputy Tharp's testimony that he specifically told Parady he would not arrest her until he received the lab results, we agree that Parady was not arrested that night.

Instead, Parady was arrested more than two months later on three felony warrants.  There is no "bright line" rule on how many minutes may pass between search and arrest for the arrest to still be "contemporaneous."  *See, e.g.*, *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006) (collecting cases in which "courts have found that a search may be incident to an arrest . . . where the search and arrest were separated by times ranging from five to sixty minutes").  But we have no trouble concluding that a search occurring two months before an arrest could not be "contemporaneous."  A search two months before an arrest cannot be justified by officer safety or evidence preservation.

Because the search incident to arrest exception cannot justify the search here, we next consider whether probable cause to arrest permits a warrantless search, even in the absence of any actual arrest.  To that end, the Commonwealth draws from the line of cases that explain an officer "has probable cause to arrest . . . without a warrant" if that officer "has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled

---

[9] In arguing on brief that Deputy Tharp had "probable cause to arrest Parady despite her not having been arrested on scene," the Commonwealth now concedes Parady was not arrested.

substance." *Purdie v. Commonwealth*, 36 Va. App. 178, 186 (2001) (quoting *Buck v. Commonwealth*, 20 Va. App. 298, 304 (1995)). But an officer's internal calculation that there is probable cause to arrest is not an actual arrest.

The distinction between a formal arrest and mere probable cause to arrest makes a difference under the Fourth Amendment. As the Supreme Court explained in *Terry v. Ohio*, 392 U.S. 1, 26 (1968), "[a]n arrest is a wholly different kind of intrusion upon individual freedom." "An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." *Id.* Our Supreme Court has elaborated that "[a]fter an arrest, a citizen's liberty is completely constrained, at a minimum, until a judicial officer has determined the issue of bail." *Commonwealth v. Hill*, 264 Va. 541, 547 (2002). "In contrast, a[n] . . . investigative detention constitutes a brief, though not inconsequential, restriction on an individual's freedom of movement." *Id.* A citizen who has been formally arrested experiences a fundamental change in legal status—intrusions on an arrestee's liberty such as a full body search, while still no small matter, are to be expected. *See Terry*, 392 U.S. at 26; *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A *custodial arrest* of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires

no additional justification." (emphasis added)).[10]  Not so for a citizen who has yet to even enter "the initial stage of a criminal prosecution."  *Terry*, 392 U.S. at 26.[11]

Given the constitutional implications of the differences between a formal arrest and mere probable cause to arrest, it is unsurprising that the Supreme Court has held "[i]t is the fact of the lawful arrest which establishes the authority to search."  *Robinson*, 414 U.S. at 235.  And a number of our sister states have held the same.  *See, e.g.*, *State v. Ingram*, 331 S.W.3d 746, 758 (Tenn. 2011) ("It is not sufficient that an arrest *could* have been made; the arrest *must* have been made roughly contemporaneously to the search in order for it to justify the search as incident to an arrest."); *State v. Pallone*, 613 N.W.2d 568, 577 (Wis. 2000) ("For the search incident to arrest exception to apply, there must be an arrest."); *Belote v. State*, 981 A.2d 1247, 1256-62 (Md. 2009) (reversing denial of motion to suppress evidence recovered in search of suspect because suspect had been detained but not formally arrested); *People v. Reid*, 26 N.E.3d 237, 239 (N.Y. 2014) ("It is irrelevant that, because probable cause existed, there *could* have been an arrest without a search.  A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not.").  Therefore, assuming, without deciding, that

---

[10] An example of such intrusion is the likelihood that an arrestee will be taken to a police station for the "routine administrative procedure . . . incident to booking and jailing the suspect." *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983).  The booking process allows for an even more intrusive search than permitted by a search incident to arrest.  *See id.* at 645 ("Police conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and more privately—be performed at the station."); *Maryland v. King*, 569 U.S. 435 (2013) (permitting DNA swab as part of routine booking).  Such an "inventory search" does not even implicate the warrant requirement because the "justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search."  *Lafayette*, 462 U.S. at 643.

[11] The Supreme Court has also explained that the officer safety justification for the search incident to arrest exception is more urgent when a formal arrest has occurred.  In *Robinson*, the Court recognized that "the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the case of the relatively fleeting contact resulting from the typical *Terry*-type stop."  414 U.S. at 234-35.

Deputy Tharp had probable cause to arrest Parady, he did not do so, so no exception to the warrant requirement applies.[12]

Before concluding, we briefly address the trial court's reliance on *Bunch v. Commonwealth*, 51 Va. App. 491, 494-96 (2008), and the statement there that "[t]he constitutional justification for conducting a weapons frisk under *Terry* . . . does not displace the far broader authority to seize illegal contraband based on probable cause principles." While at first blush this general statement about the distinction between a *Terry* frisk and a full search might suggest otherwise, *Bunch* did not hold that probable cause *alone* justifies a warrantless search without some other exception to the warrant requirement. Instead, the officer there had probable cause to arrest Bunch for marijuana possession before searching him, and then *arrested* Bunch on the scene. *Id.* at 494, 497. As such, the search incident to arrest exception applied to the facts of *Bunch*, unlike our case.[13]

To sum up then, under the Fourth Amendment, probable cause of contraband is the standard to *obtain* a warrant, not the standard to search a person without one.

___

[12] Our recent decision in *Moreno v. Commonwealth*, 73 Va. App. 267, 275 (2021), further supports this conclusion. There we explained that "the exigences of the situation," when "*coupled with* probable cause," were sufficient to "make the needs of law enforcement so compelling that [a] warrantless search [wa]s objectively reasonable under the Fourth Amendment." *Id.* (emphasis added) (quoting *Carpenter v. United States*, 138 S. Ct. 2206, 2222 (2018)). Probable cause alone is never enough to support a warrantless search of a person.

[13] Where, instead, an officer lacks sufficient probable cause to arrest before undertaking a search, any evidence obtained from the unconstitutional search cannot be used to bootstrap the pre-search probable cause. *Joyce v. Commonwealth*, 56 Va. App. 646, 658 (2010) ("When the probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction." (quoting *Italiano*, 214 Va. at 337)).

B. On the record developed below, we cannot conclude any other exception to the warrant requirement applies.

The only exception to the Fourth Amendment the Commonwealth advanced on brief is the theory we have rejected above—that probable cause to arrest alone, in the absence of an actual arrest, is sufficient. We will apply the "right result for the wrong reason doctrine" if "evidence in the record" supports a different argument on appeal and "the development of additional facts is not necessary." *Perry v. Commonwealth*, 280 Va. 572, 579 (2010). The standard of review for applying the doctrine is "whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony." *Banks v. Commonwealth*, 280 Va. 612, 618 (2010). The doctrine cannot apply when a trial court "confined its decision to a specific ground [and] further factual resolution is needed before the right reason may be assigned to support the trial court's decision." *Perry*, 280 Va. at 579 (quoting *Whitehead v. Commonwealth*, 278 Va. 105, 115 (2009), *abrogated on other grounds by Perry*, 280 Va. at 580).

The burden of justifying the warrantless search below was the Commonwealth's. Along with the theory we have rejected, the Commonwealth put on evidence to try to support two alternative theories—that exigent circumstances justified the search and that Parady was actually under arrest at the scene. The trial court rejected both arguments and confined its decision to the specific ground that probable cause to arrest alone is an exception to the warrant requirement. As a result, the record lacks enough undisputed facts for us to find on appeal that any other exception to the warrant requirement applies to Deputy Tharp's warrantless search of Parady.

C. The good-faith exception to the exclusionary rule does not apply.

Finally, the Commonwealth argues on brief that if no exception to the warrant requirement applies, the exclusionary rule is not an appropriate remedy for the warrantless search

- 14 -

because Deputy Tharp acted in good faith. The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236-37 (2011). By "removing the incentive to disregard" constitutional guarantees, the exclusionary rule "compel[s] respect" for the Fourth Amendment. *Elkins v. United States*, 364 U.S. 206, 217 (1960). "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Herring v. United States*, 555 U.S. 135, 143 (2009). In other words, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (quoting *Herring*, 555 U.S. at 144).

In assessing whether an officer's conduct was sufficiently deliberate, our Supreme Court has looked to two considerations: "What was the state of the law governing [the officer's] search at the time that he conducted it, and what factual circumstances provided either clarity or ambiguity to [the officer] in his presumed reliance upon that law?" *Id.* at 219. In examining "the state of the law at the time of the search," we ask whether a "'reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Id.* at 219-20 (quoting *Herring*, 555 U.S. at 145). Our analysis is "focused on the 'flagrancy of the police misconduct at issue,'" and we "employ the 'last resort' remedy of exclusion only when necessary 'to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'" *Id.* at 219 (first quoting *Davis*, 564 U.S. at 238; and then quoting *Herring*, 555 U.S. at 140).

Here, the officer's conduct warrants application of the exclusionary rule. The Commonwealth has not argued that Deputy Tharp relied on precedent that has since been overturned, or a statute that was later invalidated. *See Davis*, 564 U.S. 229 (officer reasonably

relied on binding appellate precedent subsequently overturned); *Collins*, 297 Va. 207 (same);

*Illinois v. Krull*, 480 U.S. 340 (1987) (police reasonably relied on a subsequently invalidated

statute); *Reed v. Commonwealth*, 71 Va. App. 164, 174-76 (2019) (same). Nor does the

Commonwealth suggest Deputy Tharp acted based on an external source of information that

(unbeknownst to him) contained an error. *See Arizona v. Evans*, 514 U.S. 1, 10-16 (1995)

(police reasonably relied on erroneous information about an arrest warrant in a database

maintained by judicial employees); *Herring*, 555 U.S. at 139-48 (police reasonably relied on

erroneous records maintained by police employees in a warrant database); *Bellamy v.

Commonwealth*, 60 Va. App. 125, 131-33 (2012) (officer reasonably relied on dispatcher

mistakenly informing him that appellant had an outstanding arrest warrant).

Instead, the Commonwealth argues Deputy Tharp's search was reasonable because he

had probable cause to arrest Parady on the scene, but chose not to because she said she had

COVID-19[14] and because he wanted to send the substance he seized from her to a lab to confirm

his belief that it was illegal narcotics. In *Jones v. Commonwealth*, 71 Va. App. 375, 384 (2019),

we applied the exclusionary rule when an officer mistakenly believed a statute "prohibit[ed]

crossing a single, solid white line." Noting that the "statute was not new or recently amended,"

we found there was "no explanation for the officer's mistake other than inadequate study of the

laws." *Id.* Relying on *Heien v. North Carolina*, 574 U.S. 54, 67 (2014), for the premise that

"[a]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is

duty-bound to enforce," we found that "failure to apply the exclusionary rule in this instance

would reward just such a 'sloppy study of the law,'" *Jones*, 71 Va. App. at 384.

---

[14] At the same time, Deputy Tharp *did* arrest the driver of the vehicle who also said he was sick after being in a household of people with COVID-19, including Parady.

Here, Deputy Tharp mistakenly believed he could search Parady without a warrant, and without arresting her, based on his own assessment of probable cause. The exceptions to the warrant requirement are "well-defined." *Cromartie v. Billings*, 298 Va. 284, 307 (2020) (quoting *Abell v. Commonwealth*, 221 Va. 607, 612 (1980)). Probable cause that an individual possesses contraband is not one of them, as we have explained above. Whatever Deputy Tharp's motivations for not arresting Parady, a reasonably well-trained officer would have known that the search was illegal under these circumstances unless he searched incident to an arrest of Parady or obtained a warrant. *See Collins*, 297 Va. at 219. An officer's mistaken assessment of unambiguous case law is deliberate conduct that compels application of the exclusionary rule to deter future constitutional violations.

## CONCLUSION

For the above reasons, we reverse the trial court's judgment denying Parady's motion to suppress and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded*.