COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


CARLOS DEON FITCHETT

                                                              OPINION BY
v.        Record No. 1744-09-1                    JUDGE RANDOLPH A. BEALES
                                                           AUGUST 17, 2010

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                            Randall D. Smith, Judge

            Hugh E. Black, III, for appellant.

            John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
            II, Attorney General, on brief), for appellee.


        While fleeing from a police officer, Carlos Deon Fitchett (appellant), a convicted felon,

accidentally dropped a handgun that had been concealed underneath the waistband of his pants.

The police officer recovered the handgun, and appellant was charged with possession of a

firearm by a convicted felon, in violation of Code § 18.2-308.2(A).  Appellant filed a pretrial

motion to suppress the handgun, which the trial court denied, and appellant then entered a

conditional guilty plea preserving his right to appeal the denial of his suppression motion.  On

appeal, appellant argues that the handgun was illegally seized and should have been suppressed.

Finding that suppression of the handgun is not required under the exclusionary rule, we affirm

the trial court's ruling for the following reasons.

                                    I.  BACKGROUND

        Officer Anthony Blount was dispatched to investigate a complaint of loud music near the

intersection of Schooner Trail and Cutter Court in the City of Chesapeake during the early

morning hours of February 24, 2008.  While still sitting in his police car, he observed two men

standing beside each other in the roadway of Cutter Court.  One of the two men, appellant, held a cup in his hand.  When the men saw the police car, they turned their backs and stood shoulder to shoulder for approximately ten seconds.  When they turned back around to face the police car again, appellant did not have the cup in his hand.

Suspecting that appellant had been holding an open container of alcohol, Officer Blount exited his police car to approach on foot, and the men began to walk away.  The officer told them to stop and asked them if they were hiding anything.  Walking back toward the officer, appellant replied that he was not hiding anything.

At this point, Officer Blount decided to conduct a pat-down search of appellant for weapons.  He directed appellant to turn around and put his hands on top of his head.  Appellant turned around and put his hands up in the air, but he did not lock his fingers together.  Appellant repeatedly looked over his shoulder to see where the officer was.

Officer Blount touched appellant's hands as a prelude to beginning the pat-down search, and appellant then reacted by running away from the officer.  The officer pursued appellant on foot.  Before the officer could catch up to him, however, appellant tripped while running up a driveway.  As appellant began to stumble, Officer Blount observed a handgun fall from underneath appellant's waistband to the ground.  Appellant fell to the ground a few feet from where the handgun had landed.

Officer Blount placed appellant in custody and advised him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  Appellant then admitted that he was a convicted felon and that the handgun was his.

In its letter opinion addressing appellant's motion to suppress, the trial court found that appellant was seized within the meaning of the Fourth Amendment when the officer ordered him to stop and raise his hands and that a "further seizure" occurred when the officer actually touched

appellant's hand. The trial court found that reasonable, articulable suspicion existed for Officer Blount to stop appellant, but that the officer's attempt to frisk him for weapons was not justified under the totality of the circumstances. However, the trial court found that appellant did not submit to the frisk, but instead fled, and that the handgun fell from appellant's waistband while he was fleeing from Officer Blount. Finding that the disclosure of appellant's handgun did not actually occur during a seizure, the trial court denied appellant's motion to suppress.

## II. ANALYSIS

On appeal, we review questions involving Fourth Amendment issues as mixed questions of fact and law. McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In such cases,

> we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error.

Id. at 552, 659 S.E.2d at 515 (citations omitted).

Appellant asserts that he was seized within the meaning of the Fourth Amendment when, at Officer Blount's direction, he stopped walking away from the officer, walked back toward the officer, and placed his hands above his head in preparation for the pat-down search – thereby establishing appellant's submission to an officer's assertion of authority. Appellant contends that this seizure violated the Fourth Amendment because, he claims, Officer Blount lacked "reasonable, articulable suspicion that criminal activity [wa]s afoot."[1] Jones v.

---

[1] For the purpose of our analysis, we will assume without deciding that appellant was seized in violation of the Fourth Amendment.

- 3 -

Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010) (citing Terry v. Ohio, 392 U.S. 1, 21, 27, 30 (1968)).

Moreover, appellant asserts that his handgun was recovered as a result of this seizure, and therefore, appellant argues that the trial court committed reversible error when it did not suppress the handgun under the "fruit of the poisonous tree" doctrine. See Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 747-48 (1974) (explaining that the "fruit of the poisonous tree" doctrine "is a facet of the federal exclusionary rule," which serves to exclude from criminal trials "evidence seized and information acquired during an unlawful search or seizure" as well as "derivative evidence discovered because of the unlawful act"). We disagree.

As the United States Supreme Court stated in Hudson v. Michigan, 547 U.S. 586 (2006), a defendant seeking application of the exclusionary rule faces "'a high obstacle'" in demonstrating that exclusion is appropriate. Id. at 591 (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-65 (1998)). Moreover, as the Supreme Court recently noted in Herring v. United States, 129 S. Ct. 695 (2009), the fact that a Fourth Amendment violation occurred "does not necessarily mean that the exclusionary rule applies." Id. at 700 (citing Illinois v. Gates, 462 U.S. 213, 223 (1983)). Indeed, the Supreme Court has emphasized that exclusion of evidence "has always been our last resort, not our first impulse," Hudson, 547 U.S. at 591, and that the Court's "precedents establish important principles that constrain application of the exclusionary rule." Herring, 129 S. Ct. at 700.

In Wong Sun v. United States, 371 U.S. 471 (1963), the Supreme Court stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

- 4 -

Id. at 487-88 (quoting John M. Maguire, Evidence of Guilt 221 (1959)). Evidence is obtained by means "sufficiently distinguishable" to be admissible despite an illegality by the authorities if it is "evidence attributed to an independent source" or "evidence where the connection has become so attenuated as to dissipate the taint." Warlick, 215 Va. at 266, 208 S.E.2d at 748.

Appellant's counsel contended during oral argument before this Court that suppression of the handgun was required because Officer Blount never would have observed and recovered the handgun *but for* the officer's seizure of appellant and the officer's brief attempt at a pat-down search, from which appellant fled. However, "evidence is not 'fruit of the poisonous tree' simply because 'but for' an unlawful search [or seizure] it would not have come to light.'" Commonwealth v. Ealy, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991) (quoting Segura v. United States, 468 U.S. 796, 815 (1984)); see Wong Sun, 371 U.S. at 488. Since "the purpose of the exclusionary rule [i]s 'to deter police misconduct,'" Johnson v. Commonwealth, 21 Va. App. 172, 175, 462 S.E.2d 907, 909 (1995) (quoting Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991)), the remedy of excluding illegally obtained evidence is available only when the evidence is "obtained either during or as a direct result" of the illegal search or seizure, Wong Sun, 371 U.S. at 485.

The facts of this case are distinguishable from those in Smith v. Commonwealth, 12 Va. App. 1100, 407 S.E.2d 49 (1991), where this Court held that the exclusionary rule required the suppression of contraband first discovered by an officer during an unlawful pat-down search. In Smith, the police officer, suspecting that Smith was hiding drugs in his pants, began a pat-down search of Smith's clothing. Smith began struggling, so the officer held Smith's arms in the air and grabbed the front of Smith's pants, pulling them open so he could see what was inside. When the pants opened, the officer observed a clear plastic bag full of what appeared to be blue-capped vials of crack cocaine. Smith broke free and fled on foot, and the officer, who

knew that Smith possessed drugs, pursued him.  After capturing Smith, the officer retraced Smith's flight and found a clear plastic bag with nineteen blue-capped vials of crack cocaine.  Id. at 1102, 407 S.E.2d at 51.

On appeal from the denial of Smith's motion to suppress the drugs, this Court held that the officer lacked reasonable suspicion to conduct a pat-down search and that the crack cocaine, "although abandoned by the defendant during flight, was *first discovered* by the police officer *during his attempt to search* the defendant during an investigatory stop."  Id. at 1104, 407 S.E.2d at 52 (emphasis added).  Because the crack cocaine was discovered during the first illegal search, this Court held that the trial court should have suppressed these drugs.  Id.

Unlike in Smith, appellant's handgun was not first discovered *during* Officer Blount's seizure of appellant.  Here, appellant ceased submitting to Officer Blount's authority and instead began running away from the officer.  During his flight on foot, appellant tripped and fell, causing the handgun to fall from his waistband, where it had been concealed, and land on the ground.  The officer never observed the handgun until it fell to the ground while appellant was fleeing from him.  Because "[t]he primary justification for the exclusionary rule" is "the deterrence of police conduct that violates" a defendant's constitutional rights, Stone v. Powell, 428 U.S. 465, 486 (1976), the purpose of the exclusionary rule is satisfied only by the suppression of evidence that is the "foreseeable consequence[] of the police's illegal conduct." State v. Washington, 585 P.2d 249, 253 (Ariz. Ct. App. 1978).  Here, however, appellant's counsel conceded during oral argument before this Court that appellant's accidental dropping of the handgun was an entirely *unforeseeable* result of the officer's seizure of appellant.

Thus, appellant's accidental loss of the handgun during his flight was an independent source for the discovery and recovery of the handgun – separate and "sufficiently distinguishable" from Officer Blount's seizure of appellant.  Wong Sun, 371 U.S. at 488.

Therefore, the discovery of the handgun is not "fruit of the poisonous tree," as its discovery is not the foreseeable result of the earlier seizure of appellant by the police and, therefore, its admissibility is not an "exploitation" of any police action here that we assume without deciding is illegal. Id. Put another way, Officer Blount's discovery of the handgun was not a direct result of his seizure of appellant, but rather was the result of appellant accidentally tripping and falling while he fled from the officer. See California v. Hodari D., 499 U.S. 621, 625 (1991) ("If, for example, [the officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest."); see also State v. Lisenbee, 13 P.3d 947, 951 (Nev. 2000) ("[W]e must conclude that flight after a seizure occurs is an effectual end to that seizure. Thus, any conduct during flight should be considered apart from the illegal police action." (citing Hodari D, 499 U.S. at 625)). On these facts, even if we assume without deciding that Officer Blount seized appellant in violation of the Fourth Amendment, we conclude that suppression of the handgun is not required. Wong Sun, 371 U.S. at 485, 488.

### III. CONCLUSION

Because the handgun was discovered by means sufficiently attenuated from Officer Blount's initial seizure of appellant – that occurred prior to appellant's flight on foot – we hold that the recovery of the handgun by Officer Blount was not "fruit of the poisonous tree." Accordingly, we affirm the trial court's denial of appellant's motion to suppress the handgun as evidence in this case.

Affirmed.