PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Decker and AtLee
Argued at Salem, Virginia

JUSTINA ALICE DUNNE

OPINION BY
v.        Record No. 0426-15-3            JUDGE RICHARD Y. ATLEE, JR.
                                          FEBRUARY 23, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Michael S. Irvine, Judge

Robert C. Hagan, Jr., for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

A Rockbridge County jury convicted Justina Alice Dunne of knowingly giving a false

report of a crime to a law enforcement official with the intent to mislead, a misdemeanor in

violation of Code § 18.2-461.  Dunne asserts that the evidence was insufficient because (1) her

allegation did not describe the commission of a "crime," and (2) her communication of such

allegation did not constitute a "report."  For the reasons that follow, we disagree and affirm.

I. BACKGROUND

"When considering a challenge to the sufficiency of evidence on appeal, we review the

evidence in the light most favorable to the prevailing party at trial and consider all inferences

fairly deducible from that evidence."  Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d

412, 414 (2008).

In February of 2014, Conner Sullivan, a student at the Virginia Military Institute

("VMI"), reported to the VMI Police Department that someone had stolen $120 from a lockbox

in her dorm room.  Sullivan shared her room with Dunne and one other student.  Dunne was in

the room during the time the money was believed to have been stolen. Dunne reported to VMI police that someone had stolen $20 from her as well. Dunne said that her money had been in her wallet, which was in the room. Officer Coffey, of the VMI Police Department, responded and spoke with Sullivan and Dunne. Officer Coffey was called away to another incident, but returned later that evening and took Sullivan's lockbox and Dunne's wallet for fingerprinting. After Officer Coffey left the second time, Dunne left the room to go to the bathroom, and was gone approximately five minutes. At trial, Sullivan testified that she did not notice Dunne to be ill at ease later that night, nor did Dunne mention any inappropriate interaction with the officer.

The next month, Detective Sergeant Hunt of the VMI Police Department interviewed Dunne and confronted her with several inconsistencies in her previous statement concerning the missing money. Dunne appeared nervous. She said nothing about any inappropriate interaction with Officer Coffey. However, in a separate conversation with a man named Tobias Philbin (described at trial as "a resident of Lexington who often hosted VMI students for meals and recreation"), Dunne claimed that Officer Coffey had placed his fingers inside of her anus and vagina during a search for evidence of the crime of petit larceny.[1] Philbin reported the allegation to the Inspector General of VMI. Ultimately the Virginia State Police began investigating Dunne's allegation.

Virginia State Police Special Agent Carl Snead asked to interview Dunne. Dunne initially declined, but ultimately, in April of 2014, she agreed to speak with Special Agent Snead. The recorded interview took place in the presence of Dunne's attorney. Special Agent Snead advised Dunne that he was not there "to investigate the theft of that money," but rather to investigate what happened after the officer responded. Special Agent Snead told Dunne: "What

---

[1] The record does not make clear exactly when Dunne made this claim to Philbin. It would appear that she made the claim after her interview with Detective Sergeant Hunt in March, because the Virginia State Police appear to have begun investigating Dunne's claim in April.

we are here to find out today is the truth, so I caution you to . . . provide the truth." Dunne then described the following[2]:

> I got changed into my robe and I went out on the stoop and the officer was there. And he asked me um, he said that he could clear me as a suspect right then and there because if I were a suspect then I would have been taking the money and moving it somewhere else right then. . . . [S]o I asked him what would you have to do to clear me as a suspect so we can get on with this investigation? . . . [H]e said he would need to do a search and I was [sic] ok. . . . So he took us [sic] down to one of the rooms in the concourse and um he conducted the search. And then he left.

Dunne alleged that the officer instructed her to remove all of her clothes, including her underwear and bra. She claimed that, in his search for evidence, the officer checked under her breasts with his hands, penetrated her vagina with two of his fingers, and digitally penetrated her anus. When Special Agent Snead asked Dunne about the officer's demeanor, Dunne said that he had "the demeanor of like a doctor. Like a doctor says to you, he wants to run test [sic] you don't question it . . . ." Later in the interview, Special Agent Snead advised Dunne:

> This is a very serious matter. We take it serious[ly]. . . . I don't enjoy doing police investigations but I have done many of them. I have arrested sheriffs, I have arrested deputy's [sic], I have even arrested troopers with my own police department. . . . [I]t's a very serious thing and we take it very serious[ly] that a police officer is out here doing something bad. So he will be investigated.

He told Dunne that "VMI is wanting to do . . . an administrative investigation. But they're just going to have to wait until my criminal part is done." He explained that he would present his investigative findings to the Rockbridge County Commonwealth's Attorney, who would "decide whether any criminal charges with [sic] be placed or not." Dunne's attorney advised her, near the end of the interview: "It's a serious crime." Dunne said: "I feel dumb because I feel like I

---

[2] What follows is an excerpt from the transcribed interview of Special Agent Snead's interview of Dunne. The full transcript was admitted into evidence, after the audio recording of the interview was played for the jury. The record on appeal contains no trial transcript, rather the parties submitted a "Written Statement in Lieu of Transcript," as permitted by Rule 5A:8(c).

didn't, because I feel like I let it happened [sic]. That, like I was the victim of sexual assault so to speak."

Special Agent Snead interviewed scores of witnesses, viewed the locations where the activity Dunne described allegedly took place, and otherwise thoroughly investigated Dunne's allegations. None of the witnesses corroborated Dunne's accusations, and Special Agent Snead ultimately obtained a warrant charging Dunne with making a false report in violation of Code § 18.2-461. After hearing the evidence, the jury found Dunne guilty, sentenced her to ninety days in jail, and fined her $2,500.[3] This appeal followed.

## II. ANALYSIS[4]

Judicial interpretation of a statute is a question of law that this Court reviews *de novo*. Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). The jury convicted Dunne of violating Code § 18.2-461, which reads:

> It shall be unlawful for any person (i) to knowingly give a false report as to the commission of any crime to any law-enforcement official with intent to mislead, or (ii) without just cause and with intent to interfere with the operations of any law-enforcement official, to call or summon any law-enforcement official by telephone or other means, including engagement or activation of an automatic emergency alarm. Violation of the provisions of this section shall be punishable as a Class 1 misdemeanor.

The warrant alleged a violation of subsection (i). Dunne asserts that the Commonwealth's evidence was deficient in two ways: it failed to show that she described the commission of "any crime," and it failed to show that she gave a "report."

---

[3] Dunne also faced a charge of petit larceny for the stolen money, but the jury acquitted her of that charge.

[4] We note at the outset that Dunne's assignments of error do not dispute that her story about Officer Coffey was untrue, rather she asserts that the lies she told do not allege the commission of a crime, and were not communicated in a manner that would subject her to criminal liability.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Bd. of Supervisors of James City Cty. v. Windmill Meadows, LLC, 287 Va. 170, 179-80, 752 S.E.2d 837, 842 (2014) (quoting Commonwealth v. Leone, 286 Va. 147, 150, 747 S.E.2d 809, 811 (2013)). Code § 18.2-461(i) is unambiguous, so we apply the plain meaning of the statute's words. "When bound by the plain meaning of the language used, appellate courts are not permitted 'to add or subtract from the words used in the statute.'" Nicholson v. Commonwealth, 56 Va. App. 491, 503, 694 S.E.2d 788, 794 (2010) (quoting Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918)).

False crime reports compel police to divert scarce resources toward unproductive ends, thereby reducing the availability of resources to catch real criminals. The legislature's criminalization of falsely reporting crimes evinces an intent both to minimize such a waste of resources and to guard against the damage to the reputations of people wrongly accused of crimes.

### A. Dunne's Allegation Described the Commission of a Crime

Dunne argues that, although the allegation she made against the officer described a Fourth Amendment violation, it did not describe the commission of a crime. In her brief, Dunne explicates the crimes she did *not* accuse the officer of committing, including: object sexual penetration in violation of Code § 18.2-67.2,[5] because that crime requires force, threat, or intimidation, which were not present because of Dunne's consent; sexual battery in violation of

---

[5] Dunne refers to this statute as Code § 18.2-64.2, but it is clear from the context that she is referring to Code § 18.2-67.2.

Code § 18.2-67.4,[6] a crime that requires force, threat, intimidation, or ruse, as well as an intent to sexually gratify (claiming such intent was not present here); and assault and battery in violation of Code § 18.2-57, because there was no allegation of any willful criminal intent on the part of the officer.

Dunne incorrectly limits the scope of Code § 18.2-461 in two ways, however. First, she wrongly assumes that the existence of defenses against her accusations means that she did not allege the commission of a crime. Second, she wrongly assumes that "any crime" means "any crime *under the laws of the Commonwealth of Virginia.*"

### 1. "Any Crime" Requires Neither a Perfect Allegation of a Criminal Act Nor a Conviction

Dunne is incorrect in her claim that the existence of defenses against her accusations means that she did not allege the commission of a crime. Code § 18.2-461 criminalizes false reporting of the commission of a crime. The statute does not require that such false report lead to the filing of a false charge, much less result in a false conviction. Dunne claims that she consented to the touching, the officer used no force, threat, intimidation, or ruse, and the officer derived no sexual gratification from the act. Because of these facts, Dunne asserts that she did not allege the commission of a crime. We agree that, had the officer been charged with a crime as a result of Dunne's report, the issue of Dunne's consent would have been litigated, as would the presence of force, threat, intimidation, or ruse, and the sexual nature of the officer's actions. Code § 18.2-461 criminalizes the false report of a crime, however, not the provision of proof beyond a reasonable doubt of each element of such a crime. That Dunne's false report of a crime might leave open hypothetical defenses to such falsely reported crime does not excuse or decriminalize her lie.

---

[6] Dunne refers to this statute as Code § 18.2-64.4, but it is clear from the context that she is referring to Code § 18.2-67.4.

## 2. *"Any Crime" is Not Limited to Virginia Crimes*

Dunne also wrongly assumes that the words "any crime" in Code § 18.2-461 means "any crime *under the laws of the Commonwealth of Virginia*." The statute contains no such limiting language, and we will not interpret a statute in a manner inconsistent with the words it contains. Jackson v. Fid. & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (observing that "it is not the province of the judiciary to add words to the statute"). Because the statute is not limited in this way, "any crime" includes federal crimes. Even assuming for the sake of argument that Dunne's false accusation did not describe a crime under Virginia law, we agree with the Commonwealth that Dunne's report alleged a violation of federal law. That law, 18 U.S.C. § 242 (2016), states:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . shall be fined under this title or imprisoned not more than one year, or both; . . . and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Dunne described the officer deliberately acting in the Commonwealth of Virginia in his official capacity to deprive her of her rights under the Fourth Amendment to the United States Constitution. Such action could constitute a violation of 18 U.S.C. § 242 that would result in imprisonment of up to one year.[7] In addition, it is hardly uncommon for state or local police to

---

[7] The action described might also constitute a violation of that portion of the statute describing aggravated sexual abuse, a crime that can result in a sentence up to life in prison. Aggravated sexual abuse is defined elsewhere in the U.S. Code as "knowingly caus[ing] another person to engage in a sexual act (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping . . . ." 18 U.S.C. § 2241(a) (2016). "Sexual act" is defined broadly in the U.S. Code, and includes "the penetration, however slight, of the anal or genital opening of

refer a case for prosecution by the United States. Because the actions Dunne ascribed to the officer could constitute a crime under federal law, the Commonwealth has satisfied the prong of the statute requiring proof that Dunne falsely reported "the commission of any crime."

### B. Dunne Gave a Report

Dunne's second assignment of error asserts that she gave no "report," as required by the statute. Dunne points out that it was not she who initially reported the officer's purported unlawful body cavity search to law enforcement; rather, she reported it to Philbin, who reported it to VMI, which ultimately contacted the State Police. Dunne also points out that she initially declined to speak with Special Agent Snead about the allegations against the officer. Dunne asserts that she "was not questioned as a complainant, but rather as a victim of a humiliating invasion of privacy. . . ." She protests that she "never gave a report to the officer" and that she "simply answered his questions." This argument is as disingenuous as it is unpersuasive.

The term "report" is undefined in Code § 18.2-461, so we must give it its usual meaning. Webster's Third New International Dictionary (2002) defines the noun "report" in several ways. The definition most clearly applicable to Code § 18.2-461 is: "something that gives information . . . [a] detailed account or statement." Id. at 1925. There are no Virginia cases requiring that, in order to be guilty of falsely reporting a crime, one must be the original caller to the police, or give a written statement, or reference a specific law violated, or proclaim "I am making a report."

The words spoken at Dunne's interview with Special Agent Snead leave no doubt that she was making a report. Dunne knew she was speaking with a special agent from the Virginia State Police. There is no mistaking this conversation for an informal chat with someone

---

another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ." 18 U.S.C. § 2246(2)(C) (2016).

unconnected with law enforcement. Special Agent Snead gave his name and noted explicitly: "I am a special agent for the Virginia State Police." He obtained Dunne's address, phone number, social security number, and date of birth prior to interviewing her.

Special Agent Snead also made clear that Officer Coffey faced potential criminal repercussions because of Dunne's lies. He advised Dunne: "This is a very serious matter. . . . I don't enjoy doing police investigations but I have done many of them. I have arrested sheriffs, I have arrested deputy's [sic], I have even arrested troopers with my own police department. . . . So he will be investigated." He explained that, while VMI wanted to conduct an "administrative investigation," that would not occur until Special Agent Snead's "criminal part" was completed. Finally, Special Agent Snead explained that once he finished his investigation, he would present his findings to the Commonwealth's Attorney for Rockbridge County, who would determine whether the officer would face "criminal charges." Dunne falsely described a crime committed against her, in minute detail. She concluded: "I was the victim of sexual assault so to speak." When Dunne spoke with Special Agent Snead, she gave a report under Code § 18.2-461.

### III. CONCLUSION

We hold that Dunne's false description of the officer's penetration of her vagina and anus alleged the commission of a crime. We also hold that her description of that crime to a special agent of the Virginia State Police constituted a report. As such, we affirm Dunne's conviction.

<u>Affirmed.</u>