COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chafin, Malveaux and Senior Judge Frank
Argued by teleconference


ANTONIO MANDELL MORRIS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1144-15-1                      JUDGE MARY BENNETT MALVEAUX
                                                    DECEMBER 6, 2016

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                               W. Revell Lewis, III, Judge

            Sharri Dishaun Mapp-Jones (The Mapp Law Firm, PLLC, on brief),
            for appellant.

            Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        The appellant, Antonio Mandell Morris, was convicted of possession with intent to

distribute heroin (second offense), in violation of Code § 18.2-248, and eluding a law

enforcement officer, in violation of Code § 46.2-817.  On appeal, he challenges the sufficiency

of the evidence to convict him of possession with intent to distribute heroin.  He also appeals the

trial court's denial of his motion to suppress evidence, arguing he was illegally seized without a

reasonable, articulable suspicion.  For the reasons stated below, we affirm the judgment of the

trial court.

                                      I.  BACKGROUND

        On the morning of April 24, 2014, appellant was driving south on U.S. Route 13 in

Northampton County.  Deputies Glenn Bailey, Steve Lewis, and Roger Pike, of the Northampton

County Sheriff's Department, were on duty along the highway at that time.  When Bailey

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

radioed appellant's license plate number to dispatchers, they informed him that, according to their information, the car was impounded in Henrico County. Based on this information, Deputy Bailey stopped appellant.

Bailey told appellant he had been stopped because of the reported impoundment. Appellant stated his car had been towed the day before while he was in Richmond. He provided Bailey with his license, registration, and a receipt showing he had redeemed his car from impoundment the previous day.

Bailey took appellant's documents back to his vehicle. He contacted dispatchers again in an effort to reconcile the police records with appellant's account and the impound receipt. Bailey also called Deputy Lewis to assist him.[1] Lewis, accompanied by Deputy Pike and a drug dog, soon appeared at the traffic stop. While Bailey spoke with dispatch and attempted to verify appellant's account, Lewis and Pike walked up to appellant's car and spoke with appellant. Lewis stated that he was conducting drug interdiction operations along the highway and that while Bailey was investigating the reported impoundment, Lewis and Pike were going to conduct a canine sniff.

According to Lewis, appellant became nervous and shaky and said he was going to call his lawyer to see if officers were allowed to conduct the canine sniff. Lewis advised appellant that he could call his lawyer, but in the meantime, the deputies would proceed. Following standard protocols, Lewis asked appellant to step out of the car during the canine sniff. Appellant refused. As Pike was getting the drug dog out of his cruiser, appellant drove away from the stop.

_____

[1] Bailey testified at both the suppression hearing and trial that he called Lewis for assistance. Lewis testified at the suppression hearing that Bailey "called me and advised me that he had [appellant] stopped," but at trial, stated ambiguously that "after I heard that [Bailey] was making the traffic stop, myself and Pike started heading in that direction." Pike, who only testified at trial, suggested that he and Lewis learned of the traffic stop from monitoring Bailey's communications with dispatch.

All three deputies gave chase. Just before reaching the toll plaza for the Chesapeake Bay Bridge-Tunnel, appellant made a U-turn and began driving north on U.S. Route 13. After a short distance, he turned right and began speeding up a side road. While negotiating a sharp left curve, appellant's car spun out toward the side of the road, and Bailey lost sight temporarily of the passenger side of appellant's car. The pursuit continued for approximately two miles until a fourth deputy blocked the road with his vehicle and halted appellant.

After arresting appellant, deputies searched his car and deployed their drug dog to check the vehicle. They did not find any drugs, but the dog alerted on both the driver's and passenger's side doors and on the glove compartment, which was open. Deputies also noticed that both of appellant's front windows were down. During the traffic stop, the passenger's side window had been up.

Deputy Lewis backtracked to the curve where appellant had spun out and Bailey had briefly lost sight of the passenger side of appellant's car. There, Lewis found a black plastic bag sitting on the east side of the ditch. He noted it did not appear to have been there for very long because there was no dust or dew on the bag. Lewis opened the bag and found approximately 400 small, glassine packets. The Virginia Department of Forensic Science later certified that the glassines contained approximately 136 grams of heroin.

A grand jury indicted appellant for possession with intent to distribute heroin (second offense) and eluding a law enforcement officer. On December 30, 2014, appellant filed a motion to suppress the drug evidence. The trial court denied that motion after a January 5, 2015 hearing. Following a bench trial on April 20, 2015, the court convicted appellant of both offenses. This appeal followed.

II. ANALYSIS

A. Sufficiency of the Evidence

Appellant argues that because the evidence failed to exclude his hypothesis of innocence, the Commonwealth failed to prove possession beyond a reasonable doubt. Appellant testified that the heroin did not belong to him and hypothesized that someone else could have left the drugs in the roadside ditch. He points out that no fingerprints or DNA evidence linked him to the drugs or the drugs' packaging. Further, he emphasizes that no deputy testified to having seen him throw anything from his car. Appellant also disputes Deputy Bailey's testimony that he "fish-tailed" at the sharp curve where the drugs were later found.

"When considering a challenge to the sufficiency of evidence on appeal, we review the evidence in the light most favorable to the prevailing party at trial and consider all inferences fairly deducible from that evidence." Dunne v. Commonwealth, 66 Va. App. 24, 26, 782 S.E.2d 170, 171 (2016) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)). In conducting such a review, this Court will not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Dunn v. Commonwealth, 52 Va. App. 611, 618, 665 S.E.2d 868, 871 (2008) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, 'the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. Thus, this Court will uphold the conviction of the trial court "unless it is plainly wrong or lacks evidentiary support." Molina v. Commonwealth, 47 Va. App. 338, 368-69, 624 S.E.2d 83, 98 (2006).

In Virginia, to convict a defendant of illegal possession of an illicit drug, the Commonwealth must prove either actual or constructive possession by the defendant. Morris v. Commonwealth, 51 Va. App. 459, 465, 658 S.E.2d 708, 711 (2008). However, "[a]ctual or constructive possession alone is not sufficient. The Commonwealth must also establish that the

defendant intentionally and consciously possessed [the illicit drug] *with knowledge of its nature and character.*" Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008) (citations and quotations omitted). Such knowledge "may be shown by evidence of the acts, statements or conduct of the accused. Other circumstantial evidence may also support a finding of a defendant's knowledge of the nature and character of the substance in his possession." Id. (citations omitted). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion.'" Ervin v. Commonwealth, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (*en banc*) (alteration in original) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979)).

Appellant offers Craig v. Commonwealth, 215 Va. 260, 208 S.E.2d 744 (1974), to support his hypothesis of innocence. However, Craig is distinguishable from the instant case in several ways. First, unlike the defendant in Craig, appellant fled from the traffic stop. Appellant's flight from an imminent canine sniff provides strong circumstantial evidence that appellant knowingly possessed the drugs. See Jones v. Commonwealth, 279 Va. 52, 58, 688 S.E.2d 269, 272 (2010) (holding that a court may consider flight, in the context of all the facts in evidence, as indicative of consciousness of guilt); Ricks v. Commonwealth, 39 Va. App. 330, 337, 573 S.E.2d 266, 269 (2002) (finding that where an appellant's flight might have been attributable to several causes, consciousness of guilt may be inferred by the trial court "if any one of those causes was the instant offense").

Second, while appellant and the defendant in Craig each elected to testify, the trial court here had substantial reason to reject appellant's testimony as self-serving and not credible. When explaining why he fled the traffic stop before police could conduct a canine sniff, appellant claimed he "feared for [his] safety" at the hands of police and wanted to reach

- 5 -

"somewhere where there was a lot of witnesses." However, shortly before reaching the toll plaza for the Chesapeake Bay Bridge-Tunnel, appellant made a U-turn and then turned onto a rural side road, driving away from numerous witnesses. As the trial court noted, "[i]f [appellant's] true concern was fear[ ] for his safety and he wanted to get somewhere where there were more people, all he had to do was pull up to the toll plaza, stop, and get out of his vehicle." Appellant's testimony about his flight provided ample reason for the trial court to discount his denial of possession of the drugs. See Carpenter v. Commonwealth, 51 Va. App. 84, 101, 654 S.E.2d 345, 354 (2007) ("It is within the province of the trial judge, as the finder of fact to assess the credibility of the witnesses and the weight to be given to their testimony.").

Third, unlike in Craig, there is strong circumstantial evidence that appellant threw the drugs from his car. Deputies Bailey and Lewis testified that appellant's passenger side window was up during the traffic stop but down after appellant's flight. The condition and location of the bag containing the drugs suggested that it was thrown from appellant's vehicle. Deputy Lewis found the bag by the road where appellant fish-tailed while negotiating a sharp, left-hand curve and officers temporarily lost sight of the passenger side of appellant's car. When they discovered the bag within five to ten minutes of appellant's arrest, it showed no signs of having been by the roadside for any appreciable time, as it was free of dust and dew. A drug dog also inspected appellant's car and alerted to both the driver's and passenger's side doors and to the glove box, which was open after the chase. While sheriff's deputies did not see appellant throw the drugs from his car, the totality of the circumstances indicates that is precisely what happened. Appellant's reliance on Craig is misplaced.

Appellant's acts, statements, and conduct, together with ample circumstantial evidence, support a finding that he knowingly possessed the heroin. Although appellant offers a hypothesis of innocence, the Commonwealth "is not required to disprove every remote

possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt." Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 526-27, 351 S.E.2d 598, 600 (1986)); see also McCary v. Commonwealth, 42 Va. App. 119, 127, 590 S.E.2d 110, 114 (2003) (observing that the Commonwealth need only "exclude reasonable hypotheses of innocence that flow from circumstantial evidence"). Nor is the Commonwealth "required to prove that there is no possibility that someone else may have . . . discarded, abandoned, or placed" drugs in the location where they were found. Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (*en banc*). Ultimately, "[w]hether the hypothesis of innocence is reasonable is itself a question of fact, subject to deferential appellate review," and the mere fact that "defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Chambliss v. Commonwealth, 62 Va. App. 459, 465, 749 S.E.2d 212, 215-16 (2013) (alteration in original) (quoting Clanton v. Commonwealth, 53 Va. App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (*en banc*)). Here, viewing the evidence in the light most favorable to the Commonwealth, we cannot say that the trial court erred in finding sufficient evidence to prove appellant's knowing possession of the heroin.

### B. Denial of the Motion to Suppress

Appellant argues the trial court erred by denying his motion to suppress where he was illegally seized without a reasonable, articulable suspicion of criminal activity. Appellant does not contest the initial lawfulness of the traffic stop. Rather, he maintains that officers unreasonably extended the traffic stop and thus violated the Fourth Amendment protections

articulated by <u>Rodriguez v. United States</u>, 135 S. Ct. 1609 (2015).[2]  Consequently, he argues that the trial court should have granted his motion to suppress the drugs and other evidence flowing from an illegal seizure.

When reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error."  <u>Roberts v. Commonwealth</u>, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009).  This Court is "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them and we give due weight to the inferences drawn from those facts."  <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quotations omitted).  "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether . . . officers unlawfully infringed upon an area protected by the Fourth Amendment."  <u>Hughes v. Commonwealth</u>, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*) (citing <u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261).  "The determination whether an encounter . . . [was] an illegal seizure . . . is not governed by a 'litmus test,' and requires consideration of all the circumstances surrounding the encounter."  <u>Jones v. Commonwealth</u>, 279 Va. 521, 528, 690 S.E.2d 95, 99 (2010) (citing <u>Ohio v. Robinette</u>, 519 U.S. 33, 39 (1996)).

---

[2] Appellant was convicted on April 20, 2015, the day before <u>Rodriguez</u> was decided. However, <u>Rodriguez</u> extends to the instant case under the rule of <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final" and that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication").  <u>See also</u> <u>Herrera v. Commonwealth</u>, 24 Va. App. 490, 494-95, 483 S.E.2d 492, 495 (1997) (applying <u>Griffith</u> to effectuate a new rule for prosecutions in a case where the rule post-dated conviction); <u>Rivera v. Commonwealth</u>, 65 Va. App. 379, 384, 778 S.E.2d 144, 147 (2015) (finding error where the trial court failed to apply a new rule which issued while defendant's case was pending before it).

1. <u>The Traffic Stop was not Unreasonably Extended</u>

<u>Rodriguez</u> permits a police officer to "conduct certain unrelated checks during an otherwise lawful traffic stop," but the officer "may not do so in a way that prolongs the traffic stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 135 S. Ct. at 1615. Permissible checks incident to a traffic stop "typically . . . involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." <u>Id.</u> By contrast, a canine sniff "is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" and thus not "an ordinary incident of a traffic stop." <u>Id.</u> (alteration in original) (quoting <u>Indianapolis v. Edmond</u>, 531 U.S. 32, 40-41 (2000)). However, as long as the canine sniff does not prolong the stop "beyond the time reasonably required to complete th[e] mission" of making permissible checks, the stop remains lawful. <u>Id.</u> at 1614-15 (alteration in original) (quoting <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005)).

Appellant argues that once he produced his license and registration, together with the receipt from the impound yard, the stop became illegal. He contends that because the vehicle had not been reported stolen and he could prove his ownership of the vehicle, deputies no longer had a reasonable, articulable suspicion to justify continuing the stop. Thus, appellant reasons, Deputy Bailey impermissibly prolonged the stop once he returned to his vehicle to check appellant's documents.

<u>Rodriguez</u> is distinguishable from the instant case. There, before initiating the canine sniff, the officer already had issued Rodriguez a written warning for the traffic violation and returned Rodriguez's documents. <u>Id.</u> at 1613. Hence, the stop was complete and the officer had unlawfully seized Rodriguez when the canine sniff occurred. Here, Deputy Bailey was still determining the proper status of appellant's vehicle when other deputies arrived and prepared to

conduct a canine sniff. He was still in possession of appellant's license, registration, and receipt and trying to complete the mission of the stop when appellant fled. Thus, the abortive canine sniff did not impermissibly prolong the stop. Viewing the evidence in the light most favorable to the Commonwealth, and considering all the circumstances surrounding the stop, appellant was lawfully seized prior to flight.

## 2. No Evidence Flowed from the Traffic Stop

Additionally, no drugs or other evidence flowed from appellant's lawful seizure during the traffic stop. As the Commonwealth noted during the motion hearing, "[w]hat's to suppress? Nothing was seized from [appellant]. There was some property found abandoned by the side of the road which the police took into possession" after appellant's flight.

The instant case is controlled by California v. Hodari D., 499 U.S. 621 (1991). In Hodari D., a group of young men fled approaching police who were clearly identified as law enforcement officers. Id. at 622-23. Hodari, chased by an officer, tossed aside "what appeared to be a small rock." Id. at 623. A moment later, an officer tackled Hodari. Id. The "small rock" was later found to be crack cocaine. Id. The United States Supreme Court agreed to consider whether "at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." Id. The Court concluded that the officer's "pursuit . . . constituted a 'show of authority' enjoining Hodari to halt, [and] since Hodari did not comply with that injunction he was not seized until he was tackled." Id. at 629. Hence, the drugs tossed aside and abandoned by Hodari while he was fleeing were "not the fruit of a seizure, and [thus] his motion to exclude evidence of it was properly denied."[3] Id.

---

[3] In Fitchett v Commonwealth, 56 Va. App. 741, 697 S.E.2d 28 (2010), this Court considered the related issue of whether to suppress evidence obtained after a defendant fled a pre-existing seizure. In Fitchett, the defendant was seized by an officer for Fourth Amendment purposes and then fled. Id. at 748, 697 S.E.2d at 32. During the officer's foot pursuit, a gun dropped from Fitchett's waistband. Id. at 744, 697 S.E.2d at 30. Fitchett was arrested and

Here, as in Hodari D., appellant was in flight from police when the evidence indicates he discarded illegal drugs. The deputies' pursuit constituted a show of their authority commanding appellant to stop, but since he continued to flee, appellant was not seized until deputies blocked the road and pulled appellant from his car. Thus, the drugs found at the side of the road after the pursuit were not the fruits of a seizure, and the Fourth Amendment is not implicated in any way. Hence, the trial court properly denied appellant's motion to exclude the evidence.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court convicting appellant of possession of heroin with intent to distribute (second offense) and eluding a law enforcement officer.

Affirmed.

---

charged with possession of a firearm by a convicted felon. Id. at 743, 697 S.E.2d at 29. The recovered gun became the subject of a motion to suppress, which was denied by the trial court. Id. at 744, 697 S.E.2d at 30. Citing Hodari D., we noted that the officer's "discovery of the handgun was not a direct result of his seizure of [Fitchett], but rather was the result of [Fitchett's] accidentally tripping and falling while he fled from the officer." Id. at 748, 697 S.E.2d at 32. As in the instant case, the "loss of the [contraband] during [the] flight was an independent source for the discovery and recovery of the [contraband] – separate and 'sufficiently distinguishable' from [the officer's prior] seizure" of the defendant. Id. (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)).