COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued by videoconference

UNPUBLISHED

ANTONIO ALEXANDER JEFFERSON

v.      Record No. 1421-19-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 6, 2020

FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Wayne R. Morgan, Jr., for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Appellant Antonio Alexander Jefferson ("Jefferson") appeals his convictions of:  one

count of possession with intent to manufacture, sell, give, or distribute cocaine, a Schedule I or II

controlled substance, in violation of Code § 18.2-248; one count of possession with intent to

manufacture, sell, give, or distribute heroin, a Schedule I or II controlled substance, in violation

of Code § 18.2-248; and one count of possession with intent to distribute, sell, or give more than

one-half ounce but less than five pounds of marijuana, in violation of Code § 18.2-248.1.

Prior to trial, Jefferson moved to suppress "any evidence obtained as a result of the illegal

search" of his vehicle.  The Circuit Court of Henrico County ("circuit court") denied that motion

and, after a bench trial, found Jefferson guilty of all offenses.  On appeal, Jefferson argues that

the circuit court erred in denying his motion to suppress and that the evidence was insufficient to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sustain his convictions because the Commonwealth failed to prove he knew of the drugs found in his car.

## I.  BACKGROUND

On May 29, 2018, Officer Earlenbaugh, of the Henrico County Police Department, was traveling northbound on Route 360 when he noticed Jefferson's vehicle.  As Jefferson neared the intersection of Route 360 and Harvie Road he changed from the center lane to the right lane, crossing a single, solid white line immediately prior to the intersection.  When Jefferson made the lane change, there was a vehicle behind him in the center lane, and another vehicle in the right lane.  At that time, Officer Earlenbaugh was approximately one-hundred feet behind Jefferson in the center lane.  Officer Earlenbaugh estimated that the car in the right lane was approximately seventy-to-eighty feet behind Jefferson, or "more than one car length back."  Based on this, Officer Earlenbaugh estimated that the traffic was "moderate" and "there was a narrow break in traffic at the speed that we were traveling."  There were no other cars in the intersection.

Officer Earlenbaugh determined that Jefferson made an unsafe lane change because "he had crossed the solid white line leading up to the intersection," and "he changed lanes in the intersection while traffic was moving through the intersection."  Officer Earlenbaugh eventually stopped Jefferson's vehicle.

After stopping the vehicle, Officer Earlenbaugh determined that the car was registered to Jefferson, and there was no one else in Jefferson's vehicle.  In the course of the traffic stop, Officer Earlenbaugh called for a K-9 unit.  The K-9 gave a positive alert that there were narcotics in the car.  Officer Earlenbaugh searched the car and found a yellow plastic bag between the center console and passenger seat.  Inside the yellow bag, Officer Earlenbaugh found several bags of a "white rocky substance," multiple pill bottles, and a drink bottle.  One pill bottle

contained thirty-one individual bags of heroin, another pill bottle contained fifty-six individual bags of cocaine, and the drink bottle contained fourteen individual bags of marijuana. Officer Earlenbaugh also found a cellphone in the backseat of the car. Pursuant to a search incident to arrest, Officer Earlenbaugh discovered $468.49 and a second cellphone on Jefferson's person.

Prior to trial, Jefferson filed a motion to suppress the evidence obtained from the traffic stop, arguing that the stop violated Jefferson's Fourth Amendment rights because Code § 46.2-804 makes "no reference to a single white line or any other prohibition against operating a vehicle as Jefferson did." Officer Earlenbaugh clarified in his testimony at the suppression hearing that he stopped Jefferson "for the lane change that he had made from the center lane to the right lane while crossing northbound originally on Route 360 at Harvie for that unsafe lane change." Based on the evidence presented at the suppression hearing, the circuit court made the following finding of fact:

> I wanted to make sure and clear that [Officer Earlenbaugh] was not stating that he believed the lane change was unsafe because of the location of the other vehicle. So it's clear, [Officer Earlenbaugh] has testified pretty clearly that he's made the traffic stop based on . . . crossing the solid white line that . . . divided the lane [Jefferson] was in.

However, the circuit court held that the law did not prohibit the operator of a motor vehicle from crossing a single, solid white line. Nevertheless, relying on Heien v. North Carolina, 574 U.S. 54 (2014), the circuit court denied the motion to suppress, holding that Officer Earlenbaugh's mistake of law was reasonable. Specifically, the circuit court held,

> This officer was clear. He, not only did he back it up with his belief, but he wrote a summons to that effect. That he thought this was an unsafe lane change . . . by . . . going over the solid white line and going into the intersection. So, I have to find that he . . . had an objectively reasonable basis to say that it was an unsafe lane change or the lane change was [not] made safely pursuant to 46.2-804 subsection two."

- 3 -

On March 20, 2019, the circuit court held a bench trial. At trial, Detective Hartman, of the Henrico County Police Department, testified in his experience investigating "street level narcotics," that most narcotics distribution was accompanied by large sums of cash, and distributors often have two cellphones. Detective Hartman estimated that the illicit drugs found in Jefferson's car would be worth at least $1,070. The circuit court subsequently found Jefferson guilty of all offenses. This appeal follows.

## II.  ANALYSIS

### A.  Motion to Suppress

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." Jones v. Commonwealth, 71 Va. App. 375, 380 (2019) (quoting Carlson v. Commonwealth, 69 Va. App. 749, 757 (2019)). Where the circuit court makes specific factual findings "[i]n assessing the credibility of witnesses and the weight and significance to be given their testimony," we defer to those factual findings if supported by credible evidence. Satchell v. Commonwealth, 20 Va. App. 641, 648 (1995). However, we "review *de novo* the application of law to those facts." Jones, 71 Va. App. at 380 (quoting Carlson, 69 Va. App. at 758).

"The Fourth Amendment protects individuals against unreasonable searches and seizures." Id. (citing U.S. Const. amend. IV). "A traffic stop is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Id. (quoting Heien, 574 U.S. at 60). "To justify the traffic stop, an officer must have reasonable suspicion that the person stopped committed a crime or traffic violation." Id. (citing McCain v. Commonwealth, 275 Va. 546, 553 (2008)). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Id. (alteration in original) (quoting Kentucky v. King, 563 U.S. 452, 459 (2011)). "To be reasonable is not to be perfect, and so the Fourth Amendment

- 4 -

allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Id. at 381 (quoting Heien, 574 U.S. at 60-61).

As such, a seizure based on an officer's reasonable mistake of law does not violate the Fourth Amendment. Id. "A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake." Id. (quoting Heien, 574 U.S. at 70 (Kagan, J., concurring)).

However, as this Court made clear in Jones, there is no ambiguity in Code § 46.2-804 to justify an officer's mistaken belief that the law prohibits changing lanes on a solid white line. Id. at 382. As we explained in that case,

> Code § 46.2-804, which deals with the laws governing highways laned for traffic, does not contain any language that could be reasonably interpreted to prohibit crossing a single, solid white line. Subsection (5) prohibits crossing "a solid line immediately adjacent to a broken line," without reference to the color of the line, if the vehicle is on the side of the solid line. Subsection (6) prohibits crossing "double traffic lines consisting of two immediately adjacent solid yellow lines." Subsection (7) prohibits crossing "double traffic lines consisting of two immediately adjacent solid white lines."

Id. Accordingly, "[t]he provisions of the statute are clear and unambiguous and do not mention a single, solid white line." Id. at 383. Essentially, ignorance of the law is not a reasonable mistake of law.

Here, the circuit court made factual findings that the only justification for the stop was that Jefferson crossed a single, solid white line. Although crossing a single, solid white line is not a *per se* violation of the law, a lane change may still violate Code § 46.2-804 if the lane change is made unsafely. Subsection (2) provides that "[a] vehicle shall be driven as nearly as is

practicable entirely within a single lane and shall not be moved from that lane until the driver has ascertained that such movement can be made safely." Code § 46.2-804(2).

On appeal, the Commonwealth argues that the stop did not violate Jefferson's Fourth Amendment rights because Officer Earlenbaugh testified that he believed Jefferson's lane change was unsafe under subsection (2) because Jefferson made the lane change in a "narrow break" in traffic. However, the circuit court did not credit that portion of Officer Earlenbaugh's testimony. In denying the motion to suppress, the circuit court stated:

> I wanted to make sure and clear that [*Officer Earlenbaugh*] *was not stating that he believed the lane change was unsafe because of the location of the other vehicle. So it's clear,* [*Officer Earlenbaugh*] *has testified pretty clearly that he's made the traffic stop based on one, crossing the solid white line that . . . divided the lane* [*Jefferson*] *was in.*

(Emphasis added). Those factual findings are supported by credible evidence, and we are thus bound by them. Consequently, the officer's mistake of law in this case was not reasonable, and the stop violated Jefferson's Fourth Amendment rights.

Nevertheless, a Fourth Amendment violation does not automatically result in a suppression of the evidence found thereafter. Carlson, 69 Va. App. at 759 (quoting Fitchett v. Commonwealth, 56 Va. App. 741, 746 (2010)). The exclusionary rule is a judicially created remedy to Fourth Amendment violations with the sole purpose of deterring future violations. Jones, 71 Va. App. at 383 (quoting Collins v. Commonwealth, 297 Va. 207, 214 (2019)). "Because of the great social cost, however, '[e]xclusion of evidence is a last resort rather than the first impulse.'" Id. (quoting Carlson, 69 Va. App. at 759). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 383-84 (quoting Collins, 297 Va. at 215). The exclusionary rule is to be invoked only "to deter deliberate, reckless, or grossly negligent [police] conduct." Id. at 384 (quoting Collins, 297 Va.

- 6 -

at 215). Thus, the test for invoking the exclusionary rule is "'whether a reasonably well trained officer would have known that the search [or seizure] was illegal' in light of 'all of the circumstances.'" Id. (alteration in original) (quoting Collins, 297 Va. at 215).

Here, as in Jones, "the officer's conduct was sufficient to trigger the exclusionary rule." Id. The officer's mistaken belief that Code § 46.2-804 prohibited a lane change over a solid white line was not reasonable because the statute "clearly and unambiguously did not prohibit crossing a single, solid white line." Id. "The statute was not new or recently amended." Id. "Thus, there is no explanation for the officer's mistake other than inadequate study of the laws." Id. "[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." Id. (alteration in original) (quoting Heien, 574 U.S. at 67). Because a reasonably well-trained officer would have known that the seizure of Jefferson was illegal, a failure to apply the exclusionary rule in this instance would reward "such a 'sloppy study of the law.'" Id. Accordingly, the circuit court erred in denying Jefferson's motion to suppress.

B.  Sufficiency of Jefferson's Knowledge of the Drugs

"[W]e review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party" below. Yerling v. Commonwealth, 71 Va. App. 527, 530 (2020) (quoting Vasquez v. Commonwealth, 291 Va. 232, 236 (2016)).[1] "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Id. (quoting Commonwealth v. Perkins, 295 Va. 323,

---

[1] In a sufficiency of the evidence analysis, we review all the evidence presented at trial, whether properly admitted or not. See Code § 19.2-324.1; see also Lockhart v. Nelson, 488 U.S. 33, 41 (1988) ("[A] reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause . . . ."

323-24 (2018)). In considering the sufficiency of the evidence, the reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 532 (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). "We must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Crowder, 41 Va. App. at 663).

To convict a person for possession of illegal drugs, the Commonwealth must prove beyond a reasonable doubt that the person "was aware of the presence and character of the drug and . . . consciously possessed it." Id. (citations omitted). Generally, "[m]ere proximity to a controlled drug is not sufficient to establish dominion and control." Id. (quoting Drew v. Commonwealth, 230 Va. 471, 473 (1986)). However, "close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant of property or of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there." Burchette v. Commonwealth, 15 Va. App. 432, 435 (1992). Similarly, ownership or occupancy of a vehicle where illegal "drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle . . . in order to prove that the owner or occupant constructively possessed the contraband." Id. (citing Code § 18.2-250; Behrens v. Commonwealth, 3 Va. App. 131, 135 (1986)).

Here, Jefferson was the registered owner of the vehicle and was the driver and sole occupant of the vehicle when Officer Earlenbaugh pulled him over. "A factfinder is permitted to infer that 'drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area.'" Ervin v. Commonwealth, 57 Va. App. 495, 517 (2011) (quoting Ward v. Commonwealth, 47 Va. App. 733, 753 n.4 (2006)). Detective Hartman testified that a conservative estimate of the drugs found in Jefferson's car was over a thousand dollars.

Moreover, items found on Jefferson's person were consistent with the distribution of narcotics. Detective Hartman testified the distribution of narcotics was typically accompanied by large sums of cash, and distributors often have two cellphones. During the search incident to arrest, officers found $468.49 in cash on Jefferson's person, as well as a cellphone. Officers found another cellphone in the backseat of Jefferson's car. From this evidence, a rational trier of fact could have found, beyond a reasonable doubt, that Jefferson had knowledge of the illicit drugs.

### III. CONCLUSION

Because we hold that the evidence was sufficient as a matter of law but also hold that the circuit court erred in denying the motion to suppress, we reverse and remand for a new trial without the evidence that should have been suppressed if the Commonwealth be so advised.

<u>Reversed and remanded.</u>